Commonwealth *v.* Hudson, Appellant.

118

Argued November 16, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David N. Savitt,* with him *Donald J. Goldberg,* for appellant.

*James T. Ranney,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 24 1974:

Appellant, James R. Hudson, was found guilty by a jury of the crimes of murder in the first degree and aggravated robbery. Post-trial motions were denied, and, on July 28, 1973, concurrent sentences of life imprisonment on the conviction for murder and ten to twenty years on the robbery conviction were imposed. This direct appeal followed.[1] We affirm.

---

[1] The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.

At trial, the Commonwealth introduced substantial evidence showing that on March 8, 1970, appellant entered a neighborhood tavern in Philadelphia. He there approached a man wearing a leather jacket of the type worn by Philadelphia police and asked him whether he was a policeman. The man responded in the negative.

Appellant then left the tavern briefly and returned. He went to the bar, ordered and paid for a drink, pulled out a revolver, and demanded that one of the two bartenders then working give him the money in the cash register. The bartender complied. Hudson ordered the first bartender to serve drinks to the several patrons in the tavern. Appellant's attention being momentarily distracted, the second bartender pushed a button on the back of the bar which activated a silent alarm summoning the police. After finishing his drink, appellant decided to leave the tavern. When Hudson, gun in hand, reached the door, he found himself face to face with a police officer. He shot the officer and fled.

The bullet lacerated the officer's liver and penetrated his diaphragm and one lung. The officer was immediately hospitalized, but died on April 6, 1970, almost one month later. The grand jury returned indictments charging murder, attempts with intent to kill, aggravated robbery, burglary, carrying a deadly weapon, and resisting arrest.[2]

Four issues are raised on this appeal. First, it is contended that appellant was not properly indicted for murder. The indictment returned by the grand

1973), gives this Court jurisdiction over the charge for murder. Because of the similarity of certain of the issues raised, the Superior Court transferred the robbery conviction to this Court.

[2] The indictments charging crimes other than murder and aggravated robbery subsequently were quashed.

jury on July 30, 1970, reads: "The . . . Grand Jury, by this indictment presents: That . . . JAMES R. HUDSON, did feloniously, wilfully and of his malice aforethought kill and murder one Harry Davis. During the commission of the above murder the said defendant was in possession of a firearm, to wit, revolver . . . ." At the beginning of trial on January 13, 1972,[3] over the objection of the defense, the court granted the Commonwealth's motion to amend the indictment by striking the last sentence as surplusage.

Pennsylvania Rule of Criminal Procedure 220[4] permits the amendment of indictments "provided the indictment as amended does not charge an additional or different offense." Clearly, the language of the amended indictment charges murder. *Commonwealth v. Koch*, 446 Pa. 469, 472-73, 288 A.2d 791, 792-93 (1972). It is argued, however, that the original indictment returned by the grand jury does not charge murder. Rather, appellant contends that because the original indictment included the factual statement that he was in possession of a revolver, it charged only the crime of carrying a deadly weapon.[5] It is as-

---

[3] At a preliminary hearing on July 8, 1970, at which time appellant was represented by counsel, the committing magistrate held appellant for court on the charge of murder, and ordered a "pre-trial arraignment" for August 12, 1970. At no time prior to trial did the defense dispute that the indictment charged murder. Indeed, at a pretrial conference, held July 15, 1971, defense counsel stated that "in fact [appellant] was indicted for murder and properly so."

[4] "The court may allow an indictment to be amended where there is a defect in form, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense."

[5] The record discloses that the grand jury indicted appellant for carrying deadly weapons in a separate bill. Cf. *Commonwealth v. Lee*, 454 Pa. 526, 312 A.2d 391 (1973).

serted that the court improperly allowed the indictment allegedly charging carrying deadly weapons to be amended to charge a "different offense," murder, and that therefore appellant was unconstitutionally convicted of a crime for which he was not indicted by the grand jury.

Manifestly, "[o]ne cannot be convicted or sentenced for an indictable offense unless the grand jury has approved an indictment covering that offense." *Commonwealth v. Lee,* 454 Pa. 526, 528, 312 A.2d 391, 392 (1973). If the grand jury in its indictment did not charge murder, then the amendment and conviction of murder would have been error. However, in our view, the original indictment charges murder.

In a murder indictment, it is not necessary to allege the means by which death is caused. It is sufficient to charge, as here, "that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased . . . ." Act of March 31, 1860, P.L. 427, § 20, 19 P.S. § 351 (1964) ; see *Commonwealth v. Koch,* supra. In the original indictment, the grand jury chose to include an unnecessary statement describing the means by which appellant caused the police officer's death. Additional allegations of this nature do not void a proper murder indictment. Any extra information or description of the events surrounding the commission of the crime are mere surplusage, and, as such, may by amendment be stricken. See *Commonwealth v. Faulknier,* 89 Pa. Superior Ct. 454 (1926) ; Annot., 17 A.L.R.3d 1181 (1968) ; cf. *Commonwealth v. Boone,* 450 Pa. 357, 301 A.2d 699 (1973). Both the original and the amended indictments clearly charge the crime of murder. Consequently, the amendment was permissible.

Second, appellant argues that the trial court's exclusion for cause of veniremen opposed to the death

penalty[6] unconstitutionally deprived him of a jury of his peers. This Court considered and rejected the same challenge in *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972); *Commonwealth v. Speller,* 445 Pa. 32, 282 A.2d 26 (1971); and *Commonwealth v. Roach,* 444 Pa. 368, 282 A.2d 382 (1971). On the authority of these precedents, appellant's claim must fail.

Third, it is contended that defense counsel's closing argument to the jury evidences ineffective assistance of counsel. We cannot agree. Counsel was faced with overwhelming evidence that appellant had committed a robbery and shot the deceased. However, the evidence also showed that the deceased died almost one month after the shooting, following a series of "complications" during treatment. The issue of causation was vigorously contested at trial.

At the beginning of his closing argument, counsel stated: "Now, there is no question in my mind as I speak to you that this defendant was in the bar and that he had a gun and that that gun fired a shot and there was a bullet from that shot and that was the bullet that was found in the body of the deceased, Officer Davis. I don't think that is refutable and I wouldn't presume to argue that it is."

After discussing the question of intent, counsel began the major portion of his jury argument, saying: "I think the most important question really that I have to argue to you is whether or not a murder actually occurred, whether or not the shots [sic] that originally entered the body of Officer Davis was, in fact, the cause of his death. . . . . If the charge is murder one of the things that [the Commonwealth has] the burden to prove is that the shot caused the death and that there

---

[6] Trial began on January 13, 1972, prior to the decision in *Furman v. Georgia,* 408 U.S. 238, 92 S. Ct. 2726 (1972) (decided June 29, 1972), in which the United States Supreme Court declared the death penalty unconstitutional as applied.

were no intervening or superseding causes which change the course of events, . . . and that those superseding causes didn't cause his death. . . . . I think from my hearing the testimony[7] that the evidence is clear here, I think it is almost crystal clear here that the gun shot wound, this particular gun shot wound was not a fatal wound. I think it is clear that the death occurred as a result of intervening and superseding causes which broke the chain of events. I think that here death was not caused by this gun shot wound."

The Commonwealth has the burden of proving beyond a reasonable doubt all the elements of murder in the first degree, including, of course, legal causation. *Commonwealth v. Nole,* 448 Pa. 62, 64-66, 292 A.2d 331, 332-33 (1972); *Commonwealth v. Johnson,* 445 Pa. 276, 284 A.2d 734 (1971). Defense counsel, however, while conceding several elements of the crime established and corroborated by six eyewitnesses, chose to focus his primary attack and argument on causation. It is argued that counsel's failure to contest *all* the elements of the crime of murder in the first degree constituted ineffective assistance.

Responsible trial advocacy imposes no inflexible duty upon counsel to contest in his closing argument all elements of the offense, nor is counsel precluded from conceding what the proof makes evident. See

---

7 The defense had called a medical expert who testified: "In my opinion, the initial gun shot wound was expeditiously and adequately handled and did not constitute any major problem. It was a serious but not a lethal wound in a thirty-four year old relatively robust young man, and his death can be attributed to an almost unbelievable number of independent, intervening and superseding, I think were the words you use, complications which patrolman Davis was unfortunate enough to suffer during his one month hospitalization." The prosecution's expert witnesses testified to the contrary, and, as evidenced by the verdict, persuaded the jury beyond a reasonable doubt that death was not caused by intervening and superseding complications.

ABA Code of Professional Responsibilities, DR 7-101 (B) (1) (1969).[8] The essence of advocacy is to select in light of the evidence and trial atmosphere what may be conceded and to challenge what counsel's judgment indicates may best advance his client's interests. The structure of the argument as well as its emphasis is the professional mechanism by which the advocate seeks to insure that adequate attention is directed to what he deems essential to his mission of persuasion. Here, counsel sought to divert the jury's attention from the apparently proven elements of the offense by centering his argument on the defense's position that death was caused by intervening and superseding circumstances. The objective of this technique was the creation of a reasonable doubt as to the Commonwealth's theory of criminal causation, and thereby a reasonable doubt as to appellant's guilt.

Counsel's determination of the tactical content of an effective closing argument is necessarily a matter of trial strategy. See *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972); ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 5.2, Commentary at 240 (Approved Draft, 1971). In passing on the claim of ineffective assistance, the single question before this Court is whether counsel's choice of strategy "had *some reasonable basis* designed to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Accord, *Commonwealth v. Hill,* 450 Pa. 477, 301 A.2d 587 (1973).

We cannot say that counsel's trial strategy had no reasonable basis. He vigorously attacked the only

---

[8] "In his representation of a client, a lawyer may . . . exercise his professional judgment to waive or fail to assert a right or position of his client."

weakness in the Commonwealth's otherwise strong case. To protect and perhaps enhance the credibility and persuasiveness of his summation, he conceded those points almost conclusively established by the prosecution. By concentrating his argument on the attenuated and challenged cause of death, counsel pursued an avenue of attack which, if believed by the jury, would have resulted in acquittal of murder in the first degree or conviction of a lesser offense.[9]

A defendant's case is more effectively advanced by affording counsel the opportunity to exercise his professional judgment to concede, if deemed advisable, that which cannot realistically be denied and instead to concentrate his affirmative efforts on the best chance for productive challenge. Recognition of the realities of trial requires that this avenue of advocacy be available to counsel. Characterizing such trial conduct as ineffective assistance would unwisely circumscribe the exercise of the advocate's professional courtroom judgment as to the best manner in which to proceed to the

---

[9] At oral argument before this Court, appellant also suggested that trial counsel's tactical approach, by which he conceded that "this defendant was in the bar and that he had a gun and that that gun fired a shot" was in effect tantamount to the entry, without appellant's consent, of a plea of nolo contendere or guilty to robbery. Counsel's recital in argument that appellant was at the scene of an alleged robbery, however, cannot be equated with the entry of a plea of either nolo contendere or guilty to the crime of robbery. Furthermore, this conjectural contention appears to be predicated on the abstract and isolated assumption that but for counsel's recital the jury would have completely ignored the strong and compelling evidence of appellant's guilt of robbery. The realities of the Commonwealth's trial proof virtually foreclosed the chance that, even absent counsel's statement, the jury would find appellant not guilty of robbery. Moreover, counsel's challenged statement, when viewed as a component of his overall trial strategy, was calculated to achieve for his client the important objective of a verdict of not guilty of the more serious crime of murder in the first degree.

jury. Counsel's tactics, here reasonably designed to decrease the possibility of a verdict of guilty of murder in the first degree, may not be deemed ineffective assistance. See *Commonwealth v. Hill,* supra; *Commonwealth v. McGrogan,* supra; *Commonwealth v. Lovett,* 442 Pa. 105, 275 A.2d 329 (1971); *Commonwealth v. Berry,* 440 Pa. 154, 269 A.2d 921 (1970); *Commonwealth v. Walker,* 433 Pa. 124, 249 A.2d 283 (1969); cf. *Commonwealth v. Laboy,* 440 Pa. 579, 270 A.2d 695 (1970).

Finally, appellant urges that the trial court in its charge virtually directed a verdict of guilty of murder. The portion of the charge in controversy, timely objected to at trial, reads: "Dr. Rodman was called by the defense. He said that, in his opinion, the cause of death was what he called the unbelievable number of complications which occurred which, in his opinion, were independent and intervening causes which superseded the gun shot wound as a cause of death. He said that, in his opinion, a wound such as this to a previously healthy man whose cardiovascular system was stable upon arrival at the hospital proves fatal in less than ten percent of the cases. He did concede, as I recall his testimony, that each complication he detailed stemmed from a prior step in the decedent's course of treatment, and the first complications stemmed from the necessity of operating on the decedent to treat his bullet wound and from a decision made in the course of this operation to transfuse the decedent because of a loss of blood, and from an initial miscalculation giving him too much blood in the course of the transfusion."

It is asserted that this charge removed from the province of the jury the contested issue of causation, and thereby violated this Court's holding in *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972), and *Commonwealth v. Motley,* 448 Pa. 110, 289 A.2d 724 (1972). The court's charge, however, was

an accurate factual summary of the testimony given and contains no suggestion that the jury return a verdict of guilty. Neither did the court direct that the jury find legal causation. To the contrary, the court prefaced its summary of the testimony by stating, "Since you [the jurors] are the sole judges of the facts, if your recollection of the evidence differs from mine you will be guided by your own recollection," and gave the jury a complete and correct charge on the issue of causation as presented by the record. It must be concluded that the court's charge was free of error. See *Commonwealth v. Miller*, 448 Pa. 114, 290 A.2d 62 (1972).

The judgments of sentence are affirmed.