## Commonwealth *v.* Townsell, Appellant.

250

Argued November 26, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Patrick W. Kittredge,* with him *James D. McCrudden,* for appellant.

*James J. Wilson,* Assistant District Attorney, with him *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 22, 1974:

On January 20, 1971, Michael Townsell was convicted by a jury of aggravated robbery and of murder

in the first degree. Post-trial motions were denied, and a sentence of life imprisonment was imposed on the murder conviction as the jury's verdict directed. An additional twenty years of probation was ordered on the robbery conviction. This one appeal followed.[1]

The factual background, as disclosed by the record, is this:

On the afternoon of January 14, 1970, at approximately 2:30 p.m., the appellant Townsell and Gregory Thomas attempted to steal from Otto Burkhard, the driver of a meat truck in Philadelphia. In carrying out the theft, Townsell assaulted Burkhard, and Thomas shot him fatally. Two young boys, Douglas Chappell and Robert Alford, witnessed the occurrence. Townsell was taken into police custody about 5 p.m. the same afternoon in the home of a friend near the scene of the robbery-homicide.

Townsell was taken to the West Detective Division Headquarters where he remained in a cell until 7:55 p.m. During this time period, Townsell was not questioned by the police, since the detectives assigned to the case were completing an on-the-scene investigation. Townsell was then transferred to Homicide Headquarters where he was initially questioned from 8:35 p.m. until 9:25 p.m. Before this questioning commenced, Townsell was informed of his *Miranda*[2] rights and was told he was in Homicide Headquarters because the victim of the robbery under investigation had been shot and was in critical condition. During the initial questioning period, Townsell admitted participating in the robbery, but said it was Thomas who shot the victim. Townsell was then left alone until

---

[1] While appellate jurisdiction of the probation order is in the Superior Court, this Court will assume jurisdiction. See §503 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, §503, 17 P.S. §211.503.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

10:00 p.m. when a second period of questioning began. This lasted until 10:45 p.m., and during this questioning, Townsell repeated what he had told the police previously. This statement was recorded in handwriting by one of the investigating officers. Before this second period of questioning, Townsell was informed the victim of the holdup had died. Between 10:45 p.m. and 2:00 a.m., Townsell was given a polygraph examination and allowed to rest. At 2:00 a.m., a third period of questioning began and the questions and answers were recorded in the form of a typewritten statement. Before this statement, Townsell was again informed of his *Miranda* rights and told the victim of the robbery was dead. The typewritten statement was completed at 5:00 a.m. and was then signed by Townsell. Sometime thereafter, he was preliminarily arraigned.[3]

At the time involved, Townsell was twenty-one years old, and had an eleventh grade education. The record clearly indicates the police did not use any threats of violence or trickery to get the incriminating statements, and that Townsell was in good health, not under the influence of drugs or alcohol, and was alert and understood his constitutional rights.

A pre-trial motion to suppress Townsell's three incriminating statements to the police was denied after an evidentiary hearing, and the typewritten statement was admitted into evidence at trial over objection. The nature of the objection was not specified. The evidentiary use of this statement at trial is the only assignment of error asserted in this appeal.

Initially, it is argued evidence of Townsell's incriminating statements should have been suppressed because at no time during the police questioning was he informed of the felony-murder rule in Pennsylvania

---

[3] The record is silent as to the exact time of the arraignment.

or warned that he "could be charged with murder in the first degree as a result of his participation in the robbery, even though he had not done the actual shooting." This identical contention was rejected by this Court in *Commonwealth v. McKinney,* 453 Pa. 10, 306 A.2d 305 (1973), and is likewise rejected here. See also *Commonwealth v. McIntyre,* 451 Pa. 42, 301 A.2d 832 (1973), and *Commonwealth v. Swint,* 450 Pa. 54, 296 A.2d 777 (1972).

Next and finally, Townsell argues evidence of his incriminations should have been suppressed because there was an unnecessary delay between his arrest and arraignment, and his incriminating statements were related to this delay. Assuming the issue is properly before us, the evidentiary use of Townsell's incriminating statement at trial, if error, was harmless error under the circumstances.

At trial the Commonwealth introduced the testimony of the eyewitness Chappell, who unequivocally identified Townsell as one of the two robbers, and remained steadfast in this identification under severe cross-examination. Additionally, the Commonwealth introduced the testimony of two friends of Townsell, Anthony Gwaltey and Lloyd Milton Wilson, who stated they met Townsell and Thomas shortly after the robbery and Townsell admitted he and Thomas participated in the robbery, and that Thomas shot the victim in the course thereof.

Ordinarily, we would have great reluctance in applying the harmless error rule in cases involving incriminating statements. But where as here, we have the accused shortly after the occurrence making incriminating admissions to individuals unconnected with the police, and these admissions are substantially the same as he made later on to the police, evidentiary use of the last mentioned admissions, if error, was harmless.

We are aware that constitutionally, evidentiary use of a coerced incriminating statement may never be classified as harmless error. However, instantly, we are not concerned with the evidentiary use of a "coerced" statement; but rather, a freely given statement, the evidentiary use of which is challenged for the violation of a procedural rule.[4]

Judgment and order affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

[4] Compare *Milton v. Wainwright,* 407 U.S. 371, 92 S. Ct. 2174 (1972), wherein the Supreme Court of the United States held the admission of a pretrial confession obtained in violation of *Massiah v. United States,* 377 U.S. 201, 84 S. Ct. 1199 (1964) was harmless error in view of other overwhelming evidence of the defendant's guilt.

---

DISSENTING OPINION BY JUSTICES ROBERTS, NIX, AND MANDERINO:

We dissent. The harmless error doctrine may not be utilized by the prosecution as a device to excuse repeated and intentional violations of a rule of law.

The prosecution may not deliberately violate a rule, (substantive or procedural), use that planned infraction to its advantage, and then avoid accountability for its conduct on the ground that the error is harmless. When the prosecution resorts to deliberate creation of error, it must bear the responsibility for imperilling convictions so obtained. See ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function §1.1, 2.8(a) (Approved Draft, 1971). Our jurisprudence does not permit a party to enjoy the benefit of such conduct. This is the essence of a fair trial.