331 A.2d 167
**COMMONWEALTH of Pennsylvania**
**v.**
**James Jarrett ASHBURN a/k/a James Jarrett Ashburn, Jr., Appellant.**

Supreme Court of Pennsylvania.
Submitted May 23, 1974.
Decided Jan. 27, 1975.

628

Mead S. Spurio, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

A Philadelphia County jury found James Jarrett Ashburn guilty of murder in the second degree. Post-verdict motions were denied, and Ashburn was sentenced to life imprisonment under the habitual offender statute.[1] This appeal followed.

Acting on information supplied by a person who shared a hotel room with Ashburn, police investigators went to the hotel room, where they discovered blood on the mattress, rug, and wall behind the bed; a pair of bloodstained trousers; and bloodstained bed clothing in a heap on the floor of the closet. Further investigation resulted in the discovery of the body of one George Santagada on a landing of one of the hotel's fire towers. Santagada had been shot once in the neck. Arrested a few hours later, Ashburn made a series of inculpatory statements in which he admitted shooting Santagada.

Ashburn's account of the incident, as contained in his statements, was as follows: He and Santagada had gone to Ashburn's hotel room late the previous night after dining with friends; Ashburn produced a pistol to show to Santagada, who then brought up the subject of Russian roulette; at that point Ashburn loaded one chamber of the pistol, pointed it at Santagada, who was sitting on

---

1. Act of June 24, 1939, P.L. 872, No. 375, as amended by the Act of June 3, 1971, P.L. 15, No. 6, § 1, 18 P.S. § 5108; repealed by the Act of December 6, 1972, P.L. 1482, No. 334, § 5, effective June 6, 1973.

the bed, and pulled the trigger twice; on the second pull, the gun discharged, fatally wounding Santagada; Ashburn then dragged Santagada's body to the fire tower landing, changed his clothes, and fled the hotel.

Ashburn's incriminating statements were introduced in evidence at trial as part of the Commonwealth's case. He contends that one of these statements, made eighteen hours after his arrival at the Police Administration Building, was obtained during a period of unnecessary delay prior to his arraignment, and thus was inadmissible under the exclusionary rule announced in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). In its opinion disposing of appellant's post-verdict motions, the trial court gave two reasons for rejecting this contention. First, the court deemed the statement admissible because it had "no reasonable relationship" to the delay prior to arraignment.[2] Second, the court concluded that in any event the admission of the statement did Ashburn no harm. Both points are urged by the Commonwealth in support of affirmance.

We need not pass on the first reason advanced by the trial court, for we agree with it that the admission of the statement if it was indeed error, was harmless. The challenged statement is identical in all material respects to an earlier statement obtained from Ashburn immediately upon his arrival at the Police Administration Building, which also was introduced in evidence at trial. The admissibility of this earlier statement is not challenged. *Compare Commonwealth v. Blagman*, Pa., 326 A.2d 296, 299 (1974) ; *Commonwealth v. Townsell*, 457 Pa. 249, 320 A.2d 111 (1974) ; *Commonwealth v. Padgett*, 428 Pa. 229, 236–238, 237 A.2d 209 (1968). Appellant alleges prejudice from his assertion in his later statement that he did not know how to play Russian rou-

2. See *Commonwealth v. Futch, supra,* 447 Pa. at 394, 290 A.2d 417. *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358, 361–362 (1974).

lette. But this assertion is entirely consistent with his earlier version of the shooting, and in any event is irrelevant to the question of his culpability. See *Commonwealth v. Malone*, 354 Pa. 180, 47 A.2d 445 (1946).

We turn next to appellant's contention that the decision of the Supreme Court of the United States in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), entitles him to a new trial. Ashburn was indicted on a charge of murder in the first degree, which at that time carried a possible penalty of death, the choice of punishment being left to the discretion of the jury.[3] The court allowed the Commonwealth a challenge for cause if a venireman expressed total opposition to the death penalty. See *Witherspoon v. Illinois*, 391 U.S. 510, 513–514, 88 S.Ct. 1770, 20 L.Ed.2d 776, 780 (1968). Two days after the trial began, the Supreme Court filed its decision in *Furman v. Georgia, supra.* That case held that the imposition and carrying out of the death penalty in the several cases before the Court, the sentences having been imposed by juries exercising statutory discretion in sentencing, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the federal Constitution. Promptly following the announcement of the *Furman* decision Ashburn's counsel moved for a mistrial, contending that if the jury had not been qualified for a capital case its composition would have been materially different. The denial of this motion is now assigned as error.

The motion was properly denied. *Furman* worked no change in the constitutional standards governing the selection of jurors. Of course, as we recognized in *Commonwealth v. Bradley*, 449 Pa. 19, 23–24, 295 A. 2d 842 (1972), the effect of *Furman* in Pennsylvania

---

3. Act of June 24, 1939, P.L. 872, No. 375, § 701, as amended by the Act of December 1, 1959, P.L. 1621, No. 594, § 1; 18 P.S. § 4701; repeal by the Act of December 6, 1972, P.L. 1482, No. 334, § 5, effective June 6, 1973. See 18 Pa. S. § 1102.

was to strip juries of the power to impose the death penalty under § 701 of the Penal Code of 1939, *supra*, note 3. But *Furman* did not disturb the jury's primary duty to determine the guilt or innocence of the defendant. Ashburn's jury was fully qualified to discharge this duty.[4]

Appellant alleges, additionally, that the prosecuting attorney's "continuous and numerous leading and immaterial questions" and the court's "numerous" directions to the jury to disregard testimony deprived him of a fair trial.[5] He does not impugn the motives of the prosecuting attorney, or question the correctness of the court's rulings on his objections. He contends, however, that the cumulative impact of these incidents must have swayed the jury against him. A detailed exposition of the record of testimony would be profitless. Suffice it to say that we have reviewed the record, and find no prejudice to appellant.

Lastly, appellant contends that the court's discussion of *Commonwealth v. Malone*, 354 Pa. 180, 47 A.2d 445, *supra*, in its charge to the jury was tantamount to a direction to return a verdict of guilty of murder in the second degree. There is no merit to this contention.

The *Malone* case bears certain striking factual similarities to the case at bar. Malone and Long, two adolescents on friendly terms with each other, procured a five chamber pistol and one cartridge, and decided to play "Russian poker". Malone then placed the muzzle of the pistol against Long's body and pulled the trigger three times, fatally discharging the pistol on the third pull.

---

**4.** Following *Witherspoon v. Illinois, supra,* and its companion case, *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), this Court has frequently upheld the constitutionality of juries selected in the manner that was employed in the case at bar. *Commonwealth v. Hudson,* 455 Pa. 117, 121–122, 314 A.2d 231, 234 (1974); *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972); *Commonwealth v. Speller,* 445 Pa. 32, 282 A.2d 26 (1971); *Commonwealth v. Roach,* 444 Pa. 368, 282 A.2d 382 (1971).

**5.** Brief for Appellant at 6.

Malone was convicted of murder in the second degree. On appeal, this Court affirmed his conviction, remarking:

"The killing of William H. Long by this defendant resulted from an act intentionally done by the latter, in reckless and wanton disregard of the consequences which were at least sixty percent certain from his thrice attempted discharge of a gun known to contain one bullet and aimed at a vital part of Long's body. This killing was, therefore, murder, for malice in the sense of a wicked disposition is evidenced by the intentional doing of an uncalled-for act in callous disregard of its likely harmful effects on others." 354 Pa. at 188, 47 A.2d at 449.

█ It was Ashburn's counsel who first broached the subject of the *Malone* case to the jury. Seizing on the passage quoted above, he argued that the odds that Ashburn's second pull of the trigger would result in Santagada's death were significantly less than three in five. In making this argument, counsel suggested that this Court in *Malone* had defined murder in the second degree as any act at least sixty per cent certain to result in the death of another.

This was a misstatement of the law which the court was duty-bound to correct.[6]   This the court did in a fair

6.   We do not suggest that defense counsel deliberately misstated the law. Faced with overwhelming evidence of Ashburn's guilt, counsel conducted his client's defense with vigor and imagination. His misleading remarks may well have been an inadvertent product of the heat of argument. Nevertheless, it bears emphasizing that the task of instructing the jury on the law belongs not to counsel, but to the trial judge. In *Commonwealth v. Renzo*, 216 Pa. 147, 148, 65 A. 30 (1906), we noted that reading excerpts from court opinions during the closing arguments of counsel "is not a desirable practice. It leads to counter extracts by the other side and tends to confuse the minds of the jury. They are much more likely to get clear ideas of the law if they receive it altogether from the judge." The practice of paraphrasing portions of appellate court opinions out of context *is equally likely to* confuse the jury, and invites the sort of corrective instruction complained of here.

and judicious manner. After defining the elements of murder in the second degree, the court delivered the standard charge, based on *Malone,* relative to acts of gross recklessness resulting in death. The court then briefly described the *Malone* case, and pointed out that the application of the general principles of law announced therein does not depend on any precise mathematical calculation of the probable consequences of the defendant's acts. This was an accurate statement of the law. Taken as a whole, the court's instructions clearly indicated that the task of applying the law to the facts of Ashburn's case was the jury's and the jury's alone. We find no error in it.

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion, in which MANDERINO, J., joined.

ROBERTS, Justice (concurring).

The disposition of appellant's claim that his formal statement was the product of unnecessary delay between his arrest and arraignment * is governed by our decision in *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974). In *Rowe,* we held that, where a statement which is not the product of unnecessary delay is followed after unnecessary delay by another statement which only repeats the contents of the first, the later statement is

* Pa.R.Crim.P. 130; *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972); *Commonwealth v. Sanders,* 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Jones,* 449 Pa. 619, 294 A.2d 889 (1972); see *Geiger Appeal,* 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973).

634

not reasonably related to the delay.   Id. at 169, 327 A.2d at 361–362.   It is therefore not made inadmissable by *Futch*.

Because I agree that appellant's other contentions are also without merit, I concur in the result.

MANDERINO, J., joins in this concurring opinion.