459 A.2d 311

**COMMONWEALTH of Pennsylvania**

v.

**David CHACKO, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1983.

Decided April 27, 1983.

John H. Corbett, Jr., Chief, Appellate Div., Public Defender, Mitchell A. Kaufman, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Melinda G. Tell, Asst. Dist. Atty., Pittsburgh, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

Opinion of the Court

NIX, Justice.

This is a direct appeal from the judgment of the Court of Common Pleas of Allegheny County sentencing appellant to life imprisonment upon his conviction of first degree murder.[1] Appellant challenges the admissibility of inculpatory statements he gave during custodial interrogation, arguing (1) that he was not given *Miranda* warnings before making his initial statement, which rendered inadmissible that statement and subsequent post-warning statements thereby tainted, and (2) that his intelligence level and psychological state made him incapable of effecting a valid waiver of his right to remain silent and right to counsel. Having examined the record we are satisfied that neither claim has merit and, accordingly, we affirm the judgment of sentence.

I.

At the time of the homicide appellant, his co-defendant, John Keen, and the victim, Barney Russell, were inmates at

---

1. Jurisdiction is vested in this Court pursuant to the Act of July 9, 1976, P.L. 586, No. 142, § 2(1), formerly codified at 42 Pa.C.S. § 722(1), prior to its amendment by the Act of September 23, 1980, P.L. 686, No. 137, § 1.

the State Correctional Institute at Pittsburgh. The testimony of fellow inmate Nathan Thomas, the Commonwealth's eyewitness, established the following. On December 26, 1977, appellant, Keen and Thomas were seated together in the prison auditorium watching a movie when Russell approached and sat beside them. Keen became angry and left the auditorium. Appellant, Keen and two other inmates confronted Thomas in the prison laundry the following morning, asking him if he had heard that Russell had threatened appellant. Thomas replied that he had not. Keen then told Thomas that if Russell threatened appellant, Russell would have to leave the prison because there would be "no place in the jail that he could go." Following this conversation Thomas left for his job in the prison butcher shop. At 11:00 a.m. Russell approached Thomas as Thomas left the shop and followed him to his cell. While Russell was in Thomas's cell, appellant and Keen appeared at the door. Keen, after asking to speak with Thomas, entered the cell and stabbed Russell repeatedly. Keen then threw his knife onto Thomas's bed and told appellant to "finish [Russell] off." Appellant entered the cell and, using both Keen's knife and his own, stabbed Russell an additional four to five times. Appellant, Keen and Thomas then left the scene. Russell died on April 17, 1978, as a result of the multiple stab wounds.

The evidence further establishes that at approximately 1:00 p.m. on December 27, 1977, appellant was informed by prison guards that the Major of the Guard, Lawrence J. Weyandt (Major) wished to see him. Appellant walked to the Major's office, entered and sat down. The Major was on the telephone when appellant arrived. The institution's Director of Treatment, James A. Wigton (Director), who was also present, asked appellant if he was involved in the stabbing incident. Appellant replied that he was the one who had stabbed Russell. The Major immediately terminated his phone call and gave appellant appropriate *Miranda* warnings. Appellant, after the warnings, elected to make a

statement in which he asserted that he had stabbed Russell in self defense during a fight.

On the following day, December 28, 1977, appellant was interviewed by State Trooper Walter A. Knaus (State Trooper) in the office of another prison official. After being advised of his constitutional rights, appellant elected again to substantially repeat the statement he had given the prison officials the previous day. Appellant was subsequently arrested and charged with murder in the first and third degrees and voluntary manslaughter. His motion to suppress his inculpatory statements was denied, and he was convicted after a bench trial of first degree murder on November 16, 1978. Appellant was sentenced on September 21, 1979 to a term of life imprisonment to run consecutive to the sentence he was then serving. This appeal followed.

## II.

Appellant argues first that his initial statement to the Director should have been suppressed because it was obtained before he was advised of his constitutional rights during the course of a custodial interrogation in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). With this aspect of appellant's argument we are in agreement. The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980); *Commonwealth v. Brown,* 473 Pa. 562, 375 A.2d 1260 (1977); *Commonwealth v. Fisher,* 466 Pa. 216, 352 A.2d 26 (1976); *Commonwealth v. O'Shea,* 456 Pa. 288, 318 A.2d 713, *cert. denied* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 685 (1974). *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) established that an individual incarcerated on charges unrelated to the subject of the interrogation is "in custody" for *Miranda* purposes. *See Oregon v. Mathiason,*

429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).[2]

■ While this Court has not had occasion to address the precise issue raised herein, we have unquestionably embraced the *Mathis* principle. As this Court, applying *Mathis,* stated in *Commonwealth v. Simala,* 434 Pa. 219, 252 A.2d 575 (1969): "[W]hen a defendant is placed in custody for any reason, he cannot be interrogated without first being advised of his rights. . . ." *Id.,* 434 Pa. at 224–225, 252 A.2d at 578. Thus we conclude that, since appellant was incarcerated at the time of questioning, he was "in custody" for purposes of *Miranda.*

■ We must next determine whether the Director's question concerning appellant's involvement amounted to interrogation. As the United States Supreme Court recently

**2.** This interpretation of *Mathis* is acknowledged in a majority of federal and state jurisdictions. *See, e.g., Battie v. Estelle,* 655 F.2d 692 (5th Cir.1981); *United States v. Harris,* 611 F.2d 170 (6th Cir. 1979); *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir.1978); *Jett v. Castaneda,* 578 F.2d 842 (9th Cir.1978); *U.S. v. Schmoker,* 564 F.2d 289 (9th Cir.1977); *Palmigiano v. Baxter,* 510 F.2d 534 (1st Cir.1974) *rev'd on other grounds,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *United States v. Powers,* 444 F.2d 260 (5th Cir.1971); *United States v. Stribling,* 437 F.2d 765 (6th Cir.), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1661, 29 L.Ed.2d 137 (1971); *United States v. Cassell,* 452 F.2d 533 (7th Cir.1971); *United States v. Jaskiewicz,* 433 F.2d 415 (3d Cir.1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *United States v. Diaz,* 427 F.2d 636 (1st Cir.1970); *Agius v. United States,* 413 F.2d 915 (5th Cir.1969), *cert. denied,* 397 U.S. 992, 90 S.Ct. 1116, 25 L.Ed.2d 399 (1970); *United States v. Redfield,* 402 F.2d 454 (4th Cir.1968); *United States v. Squeri,* 398 F.2d 785 (2d Cir.1968); *United States v. Webb,* 398 F.2d 553 (4th Cir.1968); *Ladd v. State,* 568 P.2d 960.(Alaska 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); *Washington v. State,* 287 Ala. 289, 251 So.2d 592 (1971); *People v. Lee,* 630 P.2d 583 (Colo.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); *Young v. State,* 234 So.2d 341 (Fla.1970); *State v. Brunner,* 211 Kan. 596, 507 P.2d 233 (1973); *Vines v. State,* 285 Md. 369, 402 A.2d 900 (1979); *Gaines v. State,* 404 So.2d 557 (Miss.1981); *State v. Fuller,* 204 Neb. 196, 281 N.W.2d 749 (1979); *Avant v. Clifford,* 67 N.J. 496, 341 A.2d 629 (1975); *State v. Amado,* 424 A.2d 1057 (R.I.1981); *State v. Rowe,* 259 S.E.2d 26 (W.Va.1979); *Schimmel v. State,* 84 Wis.2d 287, 267 N.W.2d 271 (1978).

explained in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980):

We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Id.* at 300–302, 100 S.Ct. at 1689–1690, 64 L.Ed.2d at 307–308 (footnotes omitted) (emphasis in original).

*See Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Mercier,* 451 Pa. 211, 302 A.2d 337 (1973); *Commonwealth v. Simala, supra.*

■ The Director testified that he asked appellant, "Are you involved in the incident that happened this morning?" Whatever the Director's motive in putting the question to appellant, such a direct question was clearly "likely to elicit an incriminating response." The Director conceded this fact on cross examination at the suppression hearing. Thus, appellant was subjected to interrogation while in custody, mandating *Miranda* warnings before questioning. Because

580

no warnings were given until after appellant's initial statement, that statement should have been suppressed.[3]  *Mathis v. United States, supra; Miranda v. Arizona, supra; Commonwealth v. Ware,* 438 Pa. 517, 265 A.2d 790 (1970).

■  Although we agree that the admission at trial of this first inculpatory statement constituted a technical violation of *Miranda,* we do not believe that it requires a disturbance of the verdict.  Our reason for that conclusion is based on our judgment that the subsequent statements, which were more detailed and comprehensive, were properly admitted and thereby rendered the introduction of the initial statement harmless.  *See Commonwealth v. Ashburn,* 459 Pa. 625, 331 A.2d 167 (1975); *cf. Commonwealth v. Bishop,* 489 Pa. 96, 413 A.2d 1031 (1980); *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980); *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972); *Commonwealth v. Thomas,* 443 Pa. 234, 279 A.2d 20 (1971).

■  We must next consider appellant's objections to the subsequent statements.  Appellant contends that these later statements were tainted by the illegality in eliciting the original admission.  It is well established that a confession obtained after a suspect has been adequately advised of his constitutional rights is not *ipso facto* inadmissible because an

---

**3.** The Commonwealth's argument that no *Miranda* warnings were required because the Director was a member of the internal prison staff rather than a police officer is without merit.

> [T]he particular office that the official who performs the custodial interrogation represents is inconsequential because *Miranda* was not concerned with the division of responsibility between the various state investigatory agencies but was concerned with official custodial interrogations of an accused and the use of statements obtained from an accused without an attorney in such circumstances to prove the State's case against the accused. *Battie v. Estelle,* 655 F.2d 692, 699 (5th Cir.1981) (footnote omitted).

This Court has acknowledged the applicability of *Miranda* to custodial interrogation by a prison official in connection with a crime. *See Commonwealth v. DuVal,* 453 Pa. 205, 307 A.2d 229 (1973) (plurality opinion).  Regardless of the Director's normal duties at the institution, it is clear that when he asked the question involved in the presence of the Major he was acting in furtherance of the then-ongoing investigation as to the stabbing of Russell.

earlier confession or inculpatory statement was made in the absence of a warning as to those rights. *Commonwealth v. Greene,* 456 Pa. 195, 317 A.2d 268 (1974); *Commonwealth v. Frazier,* 443 Pa. 178, 279 A.2d 33 (1971); *Commonwealth v. Moody,* 429 Pa. 39, 239 A.2d 409, *cert. denied,* 393 U.S. 882, 89 S.Ct. 189, 21 L.Ed.2d 157 (1968). However, the burden is on the Commonwealth to demonstrate that the subsequent statement was not the product of the exploitation of the original illegality and was obtained under circumstances sufficiently distinguishable to purge it of its original taint. *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972); *Commonwealth v. Marabel,* 445 Pa. 435, 283 A.2d 285 (1971); *Commonwealth v. Ware, supra; Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968); *Commonwealth v. Banks,* 429 Pa. 53, 239 A.2d 416 (1968); *Commonwealth v. Moody, supra.* The causal connection can be broken by a sufficient showing that the confession was "an act of free will." *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 454 (1963); *Commonwealth v. Whitaker, supra; Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661, *cert. denied,* 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967).

■■■■ Appellant's testimony at the suppression hearing and at trial establishes that he went to the Major's office with the intention of explaining the circumstances of the stabbing, and that he decided to make the statement because he wanted to exonerate himself by establishing that he had stabbed Russell in self defense. After being given his warnings, it is clear that he maintained his intention to provide his questioners with his version of the incident. *Cf. Commonwealth v. Greene, supra; Commonwealth v. Moody, supra.* In addition, there is nothing in the record to indicate that the prison officials attempted to exploit appellant's initial statement, *cf. Commonwealth v. Kenny,* 449 Pa. 562, 297 A.2d 794 (1972); *Commonwealth v. Ware, supra;* or that the statement created psychological pressure to confess, *cf. Commonwealth v. Whitaker, supra; Commonwealth v. Bart-*

*lett,* 446 Pa. 392, 288 A.2d 796 (1972); *Commonwealth v. Frazier, supra.* We conclude that appellant's statement was an act of free will sufficient to break the causal connection between his initial, illegally obtained statement and his subsequent statements. Any taint thus having been purged, the latter statements were properly admitted.[4]

## II.

▉ Appellant also contends that, because of his mental condition and the situation with which he was confronted, he was incapable of effecting a knowing, voluntary and intelligent waiver of his right to remain silent and right to counsel, rendering his statements involuntary. This argument is without merit.

Appellant bases his claim solely upon a psychiatric evaluation, prepared by the staff of Fairview State Hospital, which was introduced as an exhibit at the suppression hearing. In that report appellant was characterized as a "mental retardation subject" whose I.Q. placed him in the "dull-normal" range. This Court has consistently declined to adopt a *per se* rule of incapacity to waive constitutional rights based on mental or physical deficiencies. *See Commonwealth v. Glover,* 488 Pa. 459, 412 A.2d 855 (1980); *Commonwealth v. Hicks,* 466 Pa. 499, 353 A.2d 803 (1976); *Commonwealth v. Scoggins,* 451 Pa. 472, 304 A.2d 102 (1973); *Commonwealth v. Daniels,* 451 Pa. 163, 301 A.2d 841 (1973).

Further, this Court has clearly established that the fact that a defendant possesses a low I.Q. does not in itself render his confession involuntary. *Commonwealth v. Glo-*

4. Even if the second statement to the prison officials had been tainted, it is likely that appellant's interview one day later, in a different office, with a different questioner who administered new warnings was sufficiently attentuated to purge such taint. *See, e.g., Commonwealth v. Greene,* supra; *Commonwealth v. Mitchell,* 445 Pa. 461, 285 A.2d 93 (1971). Moreover, appellant would not be entitled to relief in any event, since he testified at trial as to the contents of those statements in support of his self defense theory. *Commonwealth v. Greene,* supra; *Commonwealth v. Collins,* 436 Pa. 114, 259 A.2d 160 (1969); *Commonwealth ex rel. Edowski v. Maroney,* 423 Pa. 229, 223 A.2d 749 (1966); *Commonwealth ex rel. Adderley v. Myers,* 418 Pa. 366, 211 A.2d 481 (1965).

*ver,* 488 Pa. 459, 412 A.2d 855 (1980) (I.Q. 70); *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976) (I.Q. 63–70); *Commonwealth v. Crosby,* 464 Pa. 337, 346 A.2d 768 (1975) (I.Q. 70–75); *Commonwealth v. Tucker,* 461 Pa. 191, 335 A.2d 704 (1975) (I.Q. 75–79); *Commonwealth v. Darden,* 441 Pa. 41, 271 A.2d 257 (1970), *cert. denied* 401 U.S. 1004, 91 S.Ct. 1243, 28 L.Ed.2d 540 (1971) (I.Q. 71–76); *Commonwealth v. Willman,* 434 Pa. 489, 255 A.2d 534 (1969) (I.Q. 60); *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A.2d 434 (1968) (I.Q. 80). Rather, the determination as to whether a knowing, voluntary and intelligent waiver was effected is to be made by viewing the totality of the circumstances. *Commonwealth v. Jackson,* 497 Pa. 591, 442 A.2d 1098 (1982); *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Johnson, supra; Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Hallowell,* 444 Pa. 221, 282 A.2d 327 (1971); *Commonwealth v. Moore,* 440 Pa. 86, 270 A.2d 200 (1970). As this Court stated in *Commonwealth v. Kichline, supra:*

> All attending circumstances surrounding the confession must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistence to suggestion or to undermine one's self-determination. See *Culombe v. Connecticut,* supra 367 U.S. [568] at 602, 81 S.Ct. [1860] at 1879 [6 L.Ed.2d 1037]; *Commonwealth v. Boyd,* 461 Pa. 17, 30–32, 334 A.2d 610, 617–18 (1975); *Commonwealth v. Purvis,* 458 Pa. 359, 364, 326 A.2d 369, 371 (1974); *Commonwealth v. Simms,* 455 Pa. 599, 602–03, 317 A.2d 265, 267 (1974).

*Id.* 468 Pa. at 279, 361 A.2d at 290.

Turning to the circumstances surrounding appellant's statement to the prison officials, it becomes obvious that appellant's waiver was not constitutionally infirm. Af-

ter being informed that the Major wished to speak with him, appellant walked to the Major's office unescorted,[5] entered and sat down. Appellant testified that he was "a little nervous" but that there was nothing physically or mentally wrong with him at the time, that he was awake, alert and aware of what was going on, and that he was not coerced in any way. Appellant's testimony is corroborated by that of the Major which further establishes that appellant answered questions promptly, did not appear to have difficulty understanding and did not ask him to repeat or clarify questions. Moreover, the Director's testimony is consistent with that of appellant and the Major. Finally, the record gives no indication that there were any unusual circumstances attending appellant's interview with the State Trooper. Appellant testified that he knowingly and willingly waived his rights and gave his statement voluntarily and without coercion. The State Trooper indicated that appellant was responsive, had no difficulty in speaking and seemed "perfectly normal." This uncontradicted evidence amply supports the suppression court's conclusion that appellant's statements were voluntary.

For all of the foregoing reasons, the Judgment of Sentence is affirmed.

ROBERTS, C.J., concurs in the result.

5. This was appellant's testimony at trial; during the suppression hearing he maintained that he was taken to the office by two guards. Appellant insisted at trial that his prior testimony was erroneous. While this factor is not crucial to our determination, we note parenthetically that it is appropriate to consider *all* of the testimony, not just the testimony presented at the suppression hearing, in determining whether evidence was properly admitted. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Rios*, 611 F.2d 1335 (10th Cir.1979); *United States v. Gibbons*, 607 F.2d 1320 (10th Cir.1979); *United States v. Soto*, 591 F.2d 1091 (5th Cir.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); *United States v. Griffin*, 555 F.2d 1323 (5th Cir.1977); *United States v. Smith*, 527 F.2d 692 (10th Cir.1975); *United States v. Canieso*, 470 F.2d 1224 (2d Cir.1972) and cases cited therein; *Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978); *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975); *cf. Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971).