Commonwealth *v.* Griffin, Appellant.

164

Submitted September 17, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stanley Bashman,* for appellant.

*Geoffrey H. Keppel, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., February 27, 1975:

This appeal arises from the conviction of appellant, Thomas Griffin, on charges of manufacture, delivery or possession with intent to manufacture or deliver a con-

trolled substance,[1] and conspiracy. Appellant now contends that certain evidence produced as a result of the search of his residence should have been suppressed by the hearing court below because: (1) Appellant did not voluntarily consent to the search; (2) Appellant's alleged consent was obtained as a result of a violation of Pa. R. Crim. P. 118;[2] (3) Appellant's alleged consent was given as a result of the police's display of a warrant authorizing the search of other areas of his residence.

Appellant and his roommate-accomplice, Leonard Gray, were arrested as a result of transactions and conversations with several undercover police officers, including a Federal Narcotics Agent, acting as potential purchasers of narcotics. The convoluted facts leading up to that arrest need not be restated here. Suffice it to say, the police had established a fairly strong case of direct and circumstantial evidence against appellant prior to arresting him and his accomplice on the charges mentioned above.[3]

Following appellant's arrest, and after giving him the *Miranda* warnings, the police wished to search his three-story residence located on North 17th Street in Philadelphia. While being interviewed for the purpose of obtaining a search warrant for his residence, the appellant first told Officer Strohm, who had participated in the arrest, that a boarder lived on the third floor of appellant's home. Based on this information Officer Strohm prepared a warrant for only the first two floors

---

[1] 35 P.S. §780-113(30) (Supp. 1974) ; Act of April 14, 1972, P.L. 233, No. 64, §1.

[2] Rule 118 is now Rule 130 of the Pennsylvania Rules of Criminal Procedure.

[3] Appellant's brother and another man were also arrested as a result of the work of these undercover agents. It was their car which contained the heroin to be sold to the officers.

of appellant's residence. Officer Strohm proceeded to get this warrant signed by a magistrate and then returned to the cell in which the appellant and Gray were being kept. He then presented the warrant to the appellant and Gray and arranged to have appellant accompany the officers for the search of his home. At this time, approximately 3:00 a.m., the appellant and Leonard Gray stated that they wanted to say something about the third floor of the residence. Before taking the statement Officer Strohm asked a police sergeant and an assistant district attorney to be present, after which Gray and the appellant were again given their *Miranda* warnings. Appellant and Gray nevertheless decided to make a statement concerning the third floor and disclosed that they shared the bedroom on the entire third floor and consented to the police search of this third floor without a warrant. Gray stated that Strohm would find ten to twelve bags of heroin in a closet. A search of the third floor revealed 25 glazed paper packets and eight loose bags of heroin, quinine, reducing sugar and slips of papers with appellant's name on it. The heroin found on the third floor of appellant's residence was introduced at trial following appellant's motion to suppress, which was denied.

## I.

The burden of proving a valid consent to search, since it represents a waiver of a substantial constitutional right, rests with the Commonwealth; and, the courts will indulge every reasonable presumption against such waiver. See generally 16 Am. Jur. 2d, Constitutional Law §131. Furthermore, in order to be valid, such consents must be given in the absence of duress or coercion, express or implied;[4] so that the Com-

---

[4] *Commonwealth v. Mamon*, 449 Pa. 249 (1972).

monwealth's burden is especially heavy when the consenter has been placed under arrest. See generally Annotation, 9 A.L.R. 3d 858 (1966). Thus, the voluntariness of a custodial consent will not be lightly inferred. *Commonwealth v. Dressner,* 232 Pa. Superior Ct. 154 (1975); *United States v. Ellis,* 461 F.2d 962 (2d Cir. 1972), cert. denied, 409 U.S. 866. However, as we said in *Commonwealth v. Dressner,* supra, "despite the fact that the voluntariness of a custodial consent is suspect, no one fact has talismanic significance, and voluntariness may be established by the Commonwealth if all the facts and circumstances indicate that the consent was voluntarily given."

In the instant case, appellant was repeatedly apprised of his *Miranda* rights. Indeed, when appellant was about to recant on his initial statement that the third floor was occupied by another, Officer Strohm would not listen until the assistant district attorney was present and had renewed the *Miranda* warnings. In *United States v. Menke,* 468 F. 2d 20, 24 (3d Cir. 1972), the Court stated: "In [Government of the Virgin Islands v. Berne, 412 F. 2d 1055 (3d Cir. 1969)], we held that where a defendant is given the detailed warnings mandated by Miranda v. Arizona . . . and thereafter 'voluntarily submits to interrogation and freely offers information on the existence and location of specifically identified evidence, and further agrees to surrender the evidence to the police, fully cognizant of his right to remain silent and fully aware that the information he provides may be used against him, the seizure of such evidence does not violate the Fourth Amendment. In such a case, the accused, by his words and actions, has abandoned any privacy or security in the location of the evidence.' "[5]

---

[5] See also *United States ex rel. Harris v. Hendricks,* 423 F.2d 1096 (3d Cir. 1970); *United States v. De Larosa,* 450 F.2d 1057 (3d Cir. 1971).

In the case at bar, the most likely explanation for appellant's admission that he shared the third floor with Gray, and his subsequent consent to have it searched, is that he felt the best course of conduct was cooperation, given the fact that he had been caught virtually "red-handed". He probably had determined that when the police searched the first two floors of the building, they would discover, either through conversation or observation, that appellant and Gray had lied about their third floor occupant.

In the instant case, given the appellant's virtually blurted-out admission of control of the third floor, the Commonwealth's repeated provision of *Miranda* warnings, and virtual certainty that the police would discover appellant's ruse when searching the building, the hearing court was on firm ground when it determined that appellant's consent was voluntary and not a product of his arrest. In any event, considerable deference should be given to the hearing court's determination for it is in a better position than we to evaluate and weigh the evidence. *Commonwealth v. Dressner,* 232 Pa. Superior Ct. 154 (1975). See also *United States ex rel. Harris v. Hendricks,* 423 F. 2d 1096 (3d Cir. 1970); *United States v. Page,* 302 F. 2d 81 (9th Cir. 1962); *State v. King,* 209 A. 2d 110 (N.J. 1965).

## II.

Appellant's second contention rests upon old Rule 118 of the Pennsylvania Rules of Criminal Procedure which requires that one who has been arrested without a warrant "shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him." The Pennsylvania Supreme Court, in *Commonwealth v. Futch,* 447 Pa. 389 (1972), held that statements or other evidence obtained as a result of such an "unnecessary delay" must be sup-

pressed. Elaborating upon the *Futch Rule* in *Commonwealth v. Williams,* 455 Pa. 569, 572, 319 A. 2d 419, 420 (1974), the Court established a three part rule for determining whether evidence must be suppressed because of a violation of Rule 118. The Court therein explained that: (1) The delay must be unnecessary; (2) The proffered evidence must be a result of the delay; and (3) The proffered evidence must be "prejudicial."

Since the Commonwealth sets forth no reasons herein why the five and one-half hour delay occurred, we must assume it was unnecessary; and, there can be no doubt that the evidence sought to be suppressed was damaging to appellant's case. Therefore, if the obtaining of the evidence was reasonably related to the delay, the evidence should have been suppressed.

Generally speaking, *Futch* violations have been found only where there has been an extended period of interrogation prior to the accused's confession. *Commonwealth v. Cherry,* 457 Pa. 201 (1974) ; *Commonwealth v. Williams,* 455 Pa. 569 (1974) ; *Commonwealth v. Dixon,* 454 Pa. 444 (1973) ; *Commonwealth v. Dutton,* 453 Pa. 547 (1973) ; *Commonwealth v. Tingle,* 451 Pa. 241 (1973). In the instant case, however, no such interrogation was conducted of appellant, and his statements and consent were wholly unsolicited. Secondly, as in *Commonwealth v. Garnett,* 458 Pa. 4 (1974), the facts indicate that appellant was aware of the offenses with which he was charged. Although, unlike *Commonwealth v. Garnett,* supra, appellant did not consult with counsel, it is undisputed that he was advised of that right on several occasions—the last of which occurred immediately before his statements—so that he voluntarily and intelligently waived the right. Therefore, we conclude that the hearing court properly found no *Futch* violation and refused to suppress the

statements of appellant and the evidence discovered thereby.

## III.

Appellant's third argument for suppression, that appellant's consent was given with the knowledge that a warrant had already been obtained for other locations in the same building, rests on language from *Bumper v. North Carolina,* 391 U.S. 543 (1968), which was adopted by the Pennsylvania Supreme Court in *Commonwealth v. Mamon,* 449 Pa. 249, 253-254 (1972): "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." It is obvious that the *Bumper* language is of no help to appellant simply because the officer did not claim authority to search the third floor. The warrant was specifically drawn to cover only the first two floors. The appellant was clearly aware of this or there would have been no need for his unsolicited consent to the search of the third floor.

Having determined that appellant's arguments for suppression of the evidence obtained from the third floor search lack merit, we hold that the trial court was correct in allowing that evidence to be admitted.

Judgment of sentence is affirmed.