Commonwealth *v.* Simmons, Appellant.

Submitted September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joseph T. Kelley, Jr.*, and *Ettinger, Poserina, Silverman, Dubin & Anapol*, for appellant.

*Francis C. Barbieri, Jr., Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 29, 1976:

Appellant, Ezekiel Simmons, was arrested on December 20, 1973 on charges of rape, felonious restraint, aggravated assault, robbery, criminal conspiracy and various firearms violations. These charges stemmed from an incident beginning on the evening of December 19, in which a group of armed men entered a home in West Philadelphia and beat, robbed, raped and held captive its occupants until the police arrived on the following morning.

On September 11 and 12, 1974, appellant's Pre-Trial Motions to Suppress Evidence were heard and denied. On September 23, 1974, appellant was tried before a judge without a jury and found guilty of rape, aggravated assault, and criminal conspiracy. On January 13, 1975, appellant's post-trial motions were heard. His motion in arrest of judgment as to the aggravated assault conviction was granted and all remaining motions were denied. Appellant was then sentenced to not less than two nor more than seven years imprisonment on the rape conviction and sentence was suspended on the conviction for criminal conspiracy. This appeal followed.

I

The first point of error advanced by the appellant is the lower court's refusal to suppress his statement to the police. This statement was allegedly obtained in violation of Pennsylvania Rule of Criminal Procedure 130[1]

---

1. "When a defendant has been arrested without a warrant in a court case, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him and he shall be given an immediate preliminary arraignment." Pa.R.Crim.P. 130.

(formerly Rule 118). Appellant relies principally on *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) to support this contention. In *Futch*, the Pennsylvania Supreme Court determined the effect of excessive pre-arraignment delay upon statements made by an accused in the period between arrest and arraignment.

> "[W]e think it appropriate to follow the federal approach and exclude all evidence obtained during 'unnecessary delay' except that which ... has no reasonable relationship to the delay whatsoever." 447 Pa. at 394.

Our court examined the evolution of this doctrine in *Commonwealth v. Griffin*, 232 Pa. Superior Ct. 163, 170, 336 A.2d 419, 422 (1975). "Elaborating upon the *Futch Rule* in *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419, 420 (1974), the Court established a three part rule for determining whether evidence must be suppressed because of a violation of Rule 118. The Court therein explained that: (1) The delay must be unnecessary; (2) The proffered evidence must be a result of the delay; and (3) The proffered evidence must be 'prejudicial'."

In the instant case, the circumstances surrounding appellant's statement fail to satisfy at least two requirements of the three-pronged test stated in *Griffin*, *supra*, and thus fail to provide any basis on which the statement may be suppressed. First, the record does not indicate that the pre-arraignment delay in this case was unnecessary, as that term is employed in Rule 130 and the cases applying it.[2] The appellant was arrested and taken to West Detective Division along with nine or more

---

2. "Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested." *Adams v. United States*, 399 F.2d 574, 579 (D.C. Cir. 1968) (Concurring opinion of Judge BURGER).

other persons, six of whom were co-defendants. During the next six hours detectives interviewed these persons, as well as police officers present at the scene, in order to determine what had taken place. The Commonwealth asserts that the delay between the appellant's incarceration and the taking of his statement was due solely to the large number of suspects and complainants to be questioned. During these five and three-quarter hours, appellant was kept in a room on the second floor of West Detective Division, where toilet facilities were available to him. At no time during this period was the appellant interrogated. There is no evidence of abusive conduct by the police in this instance, but only a protracted period of initial questioning and administrative processing due to the unusual circumstances and the number of people involved. While such a hiatus between arrest and arraignment is highly unfortunate and far from a model for police conduct, on the present facts, it does not constitute "unnecessary delay" under Pa.R.Crim.P. 130.

The second requirement which must be met in order for evidence to be excluded under the test in *Williams, supra,* is that the evidence must be a result of the delay. It does not appear that this delay had any coercive purpose or that any coercive pressure was placed upon the appellant. Other than the delay itself, no claims of abuse or deprivation are made. Appellant was not interrogated repeatedly or for a long period, rather his initial interrogation began after the delay and lasted little more than an hour, at the end of which time appellant signed the statement involved herein.[3]

Further, this is not a case where a suspect at first

---

3. "Generally speaking, *Futch* violations have been found only where there has been an extended period of interrogation prior to the accused's confession. Commonwealth v. Cherry, 457 Pa. 201 (1974); Commonwealth v. Williams, 455 Pa. 569 (1974); Commonwealth v. Dixon, 454 Pa. 444 (1973); Commonwealth v. Dutton, 453 Pa. 547 (1973); Commonwealth v. Tingle, 451 Pa. 241 (1973)." *Commonwealth v. Griffin,* 232 Pa. Superior Ct. 163, 170, 336 A.2d 419, 422 (1975).

denied involvement or refused to make a statement and later broke down under prolonged or repeated periods of questioning. Here, appellant was apparently willing to talk to the police as soon as his questioning began. It is thus apparent that, regardless of delay in his arraignment, appellant has shown no connection between such delay and his statement. Where no such connection exists, a statement clearly cannot be excluded under *Futch, supra,* or its progeny.

Finally, it is difficult to comprehend how the appellant was prejudiced by the introduction of his statement at trial. It is true that the statement places appellant at the scene of the crime, but the circumstances of his arrest and the testimony of a complaining witness also establish this fact. In addition, the statement was not a confession, but was rather almost entirely exculpatory. Appellant denied participating in a rape or even seeing a female in the house. The only incriminating part of the statement, appellant's admission that he hit one of the boys being held in a rear bedroom with a door spring, is not relevant to appellant's convictions or to this appeal. Even if the police conduct in this case violated *Futch, supra,* which we find it did not, the admission of appellant's statement did not result in prejudice which would necessitate a new trial. *Commonwealth v. Townsell,* 457 Pa. 249, 320 A.2d 111 (1974).

## II

It is claimed that the court below erred in permitting the complainant's in-court identification of appellant because this identification was tainted by several improperly suggestive prior confrontations: at the scene, at the police station and at the pre-trial hearing. The only other identification introduced into evidence was the one made at the scene. The admissibility of this type of identification is controlled by *Commonwealth v. Turner,*

454 Pa. 520, 314 A.2d 496 (1974), where the court states:

"Evidence of identification should not be received at trial if the circumstances of the pretrial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification, (citations omitted). However absent some special elements of unfairness, we do not believe that prompt on-the-scene confrontations fall within this ambit of suggestiveness." 454 Pa. at 523, 314 A.2d at 498. Here the identification in question was made shortly after the rape took place. The prosecutrix picked the appellant from a group of nine or more men being led from the house by the police. There is no special element of unfairness here as is necessary to destroy the reliability of an on-the-scene identification.

Because no impropriety was involved in the on-the-scene identification, it could have imparted no taint to the complainant's subsequent identification of appellant at trial. The complainant's testimony indicates that she had an adequate opportunity to observe the appellant, and that her in-court identification was of independent origin. Under these circumstances other ostensibly prejudicial confrontations, not admitted into evidence, are of no significance. *Commonwealth v. Burton*, 452 Pa. 521, 307 A.2d 277 (1973). In addition, since the on-the-scene identification was proper and sufficient in itself to identify the appellant beyond a reasonable doubt as the perpetrator of the crime, we need not consider other possibly prejudicial pre-trial confrontations. *Commonwealth v. Jones*, 231 Pa. Superior Ct. 323, 331 A.2d 788 (1974).

III

Appellant argues that it was reversible error for the trial court to admit his statement into evidence because Detective Brignola, who took the statement, was unable to positively identify appellant as the person who made

it. Each page of the statement was signed, and for the purpose of signature comparison the Commonwealth introduced a jury trial waiver form which it was stipulated that appellant had signed in court just prior to trial. The trial judge clearly had a reasonable basis upon which to conclude that appellant had made the statement and to admit it into evidence.

## IV

The final point of error assigned by the appellant is that the trial court, sitting without a jury, erred in finding the evidence sufficient to convict appellant of conspiracy and rape. The standard of appellate review on this issue was stated by this court in *Commonwealth v. Truss*, 230 Pa. Superior Ct. 262, 263, 326 A.2d 630 (1974).

"The test of the sufficiency of the evidence is whether, accepting as true all the evidence upon which, if believed, the fact-finder could properly have based his verdict, it is sufficient in law to prove the defendant guilty of the crime charged beyond a reasonable doubt. (citations omitted). It is axiomatic that the evidence is to be reviewed in a light most favorable to the verdict winner (Commonwealth). (citations omitted). In so doing, we will accept as true the Commonwealth's evidence and all reasonable inferences arising therefrom. (citation omitted)."

The record reflects that on the night of December 19, 1973, a group of armed men entered a residence at 506 North Vodges Street and proceeded to beat, rob, rape and otherwise generally terrorize the occupants. These men had complete control of the premises from the time they entered and drew their guns until the police arrived on the following morning. During this period, the appellant was allowed access to the prosecutrix, who was confined to a bedroom.

The evidence here was sufficient to find the appellant guilty of conspiracy. There was clearly an adequate basis

upon which the fact-finder could infer the requisite agreement to commit a crime or crimes between the appellant and his co-defendants. As this court has pointed out:

"[T]o sustain a conviction of conspiracy there need not be direct proof of an agreement between co-defendants to perform an illegal act. '[W]here the conduct of the parties indicates that they were acting together with a common and corrupt purpose in view, the jury may properly infer that a conspiracy did exist.' " (citations omitted) *Commonwealth v. Armbruster*, 225 Pa. Superior Ct. 415, 420, 311 A.2d 672, 674 (1973). Here the court could properly infer from the appellant's presence at the scene, from the free movement and impunity which he apparently enjoyed and from his access to the prosecutrix that there was an agreement between the appellant and his co-defendants to commit or to promote and facilitate the commission of a crime, at least as to the rape of the complainant.

Similarly, there is more than adequate evidence to support appellant's rape conviction. The prosecutrix testified that appellant twisted her arm and threatened her when she ignored his order to undress. He then got into bed with her and inserted his penis into her vagina without her consent. The victim had an ample opportunity to observe the appellant and she made an immediate and positive identification of him within a few hours after the crime was committed. The stipulated medical report from the complainant's physical examination indicated the presence of spermatozoa in her vagina. The above evidence is clearly sufficient to support a conviction of rape. *Commonwealth v. Kinnard*, 230 Pa. Superior Ct. 134, 326 A.2d 541 (1974).

The judgment of sentence of the lower court is affirmed.

HOFFMAN, J., concurs in the result.