J-S19023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                  :               PENNSYLVANIA
                                                  :
                v.                                :
                                                  :
CODY K. REED                               :
                                                    :
             Appellant              :       No. 2556 EDA 2024

Appeal from the Judgment of Sentence Entered August 19, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0001171-2022

BEFORE: PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY STABILE, J.:                **FILED JULY 31, 2025**

Appellant, Cody K. Reed, was found guilty after a non-jury trial of making a false statement on a firearm application (18 Pa.C.S.A. § 6111(g)(4)(ii)), and unlawful possession of a firearm (18 Pa.C.S.A. § 6105(a)(1)). He was sentenced to an aggregate prison term of 3.5 to 10 years. In this appeal, Appellant, who was a parolee at the relevant times, argues that his convictions cannot be upheld because the police lacked reasonable suspicion when searching his cellular phone, and thereby obtaining incriminating evidence later used against him at trial. Finding that the search of Appellant's phone was lawful, we affirm.

The underlying case facts have been summarized by the suppression court as follows:

> [O]n May 19, 2021, Montgomery Township Police were dispatched to the Rodeway Inn located at 969 Bethlehem Pike, Montgomeryville, Montgomery County. Detective William

Steinberg of the Hatfield Township Police Department was also present at the Rodeway Inn, having learned the previous day that Hailey Covelens, was suspected to be present there, and that Ms. Covelens was involved in a possible straw purchase of a Smith & Wesson M&P 15-22, 22 caliber rifle, serial number LAB7507, for a male named Cody Reed. Police found Ms. Covelens and Appellant present together in a room at the Rodeway Inn. However, no firearm was discovered at that time.

On July 15, 2021, Appellant was present at the Pennsylvania State Board of Probation and Parole Office in Norristown, for a meeting.

During that meeting, Appellant had with him his cell phone and a receipt for the Smith & Wesson rifle. He advised his parole agent he was staying at the Rodeway Inn. State Parole Agents and Hatfield Township Police Officers responded to room 243 at the Rodeway Inn, which Appellant was the only registered occupant, and conducted a search of the room. During the search police located the Smith & Wesson, serial number, LAB7507 on a table. Appellant admitted to have possessed the firearm and being with Ms. Covelens when she purchased it.

Further investigation, including text messages from Appellant's cell phone and recorded prison phone calls, established that Appellant directed Ms. Covelens to purchase the firearm on his behalf. To purchase the firearm, Ms. Covelens completed the ATF 4473 Firearms Transaction Record, swearing that she was the actual buyer of the firearm. This statement was untrue, because Appellant was the intended recipient of the firearm. On May 18, 2021, the time of the firearm purchase, Appellant was on parole out of Bucks County for Robbery/Fear of Imminent Bodily Injury, a felony of the first degree.

Suppression Court 1925(a) Opinion, 12/6/2024, at 1-2 (internal citations omitted).[1]

_____

[1] Appellant was found guilty and sentenced as outlined above on August 19, 2024. On that same date, Appellant was also sentenced in a separate case, having been convicted of first-degree murder and related offenses; he has also sought review of the judgment of sentence in that latter case, at docket number 2552 EDA 2024.

Appellant moved to suppress the evidence yielded from the searches of his cell phone, and a suppression hearing was held on February 24, 2023. He argued that the warrantless search and seizure of the device was performed without the required level of suspicion on the part of parole agents and the police. Appellant also asserted that any subsequent evidence obtained by authorities after his phone was searched, including his verbal admissions to the arresting officers, had to be excluded from trial. *See* N.T. Suppression Hearing, 2/24/2023, at 6-7. The suppression court denied Appellant's motion and made several factual findings and conclusions of law which rendered the subject evidence admissible. *See* Findings of Fact and Conclusions of Law, at 11/6/2/2023, at 1-9.

In its factual findings, the suppression court determined that the supervising parole agent, Colin Kelley, had received notice in July 2021 from officers of the Hatfield Township Police Department that Appellant had been involved in the purchase of a firearm, at a location which was not his registered residence. *See id*., at 2. Agent Kelley made several unsuccessful attempts to contact Appellant, and then traveled to Appellant's registered residence, only to learn that he no longer lived there. *Id*., at 2-3.

On July 14, 2021, Appellant belatedly contacted his supervising parole agents to inform them of his changed residence. The next day, he came to the agents' office. When Appellant arrived, he emptied his pockets, turning over his cellular phone. *See id*., at 3. By that point, Agent Kelley had already determined that Appellant had violated the terms of his parole by changing

his residence without prior approval, failing to remain in contact with his supervising parole agent, and failing to notify his parole agents of the contact he had earlier that month with the police. *See id*., at 4.

The suppression court credited Agent Kelley's testimony that Appellant consented to a search of the phone. *See id*. Upon receiving consent, Agent Kelley looked through photos saved on the device and discovered an image of Appellant holding a "an AR-15 style rifle as well as text messages exchanged with his then girlfriend about the firearm." *Id*.

Agent Kelley then searched Appellant's wallet and found a receipt for the purchase of a weapon resembling the one in photo on Appellant's phone, a Smith and Wesson M&P 1522 .22 long rifle. *See id*. Police later searched Appellant's actual residence at that time and found several weapons, including the same firearm listed on the receipt found in his wallet. *See id*., at 5.

Once he was arrested and read his *Miranda* rights, Appellant admitted to owning the firearm found in his residence. *See id*., at 8. The police then applied for a warrant to search Appellant's cell phone, describing the above parole violations in the attached affidavit. *See id*. The warrant was granted, and the phone was again searched. *See id*., at 9.

The suppression court ruled that Appellant had consented to the initial warrantless search of his phone by Agent Kelley, and that the resulting search was valid. *See id*., at 17, 19. Further, the suppression court found that Agent Kelley had reasonable suspicion to believe that the phone would contain evidence of parole violations. *See id*., at 19. This reasonable suspicion was

"[b]ased upon [Appellant's] overall lack of contact with his supervising agent, [his] failure to report his law enforcement contact, and moving his residence without prior approval[.]" *Id*. Additionally, the suppression court ruled that the police had the requisite probable cause to justify the second search of the phone. *See id*., at 20. Appellant's suppression motion was therefore denied, *see id*., and after a non-jury trial, he was found guilty of the offenses enumerated above.

Appellant timely sought review, and in his brief, he contends that the suppression court erred in admitting the evidence obtained by the state parole agents during the search of his phone. *See* Appellant's Brief, at 4, 8-10. Specifically, he asserts that the suspected parole violations concerning Appellant's living arrangements and lack of contact did not give parole agents reasonable suspicion that his cell phone contained evidence of a parole violation or any other crime. As to Appellant's consent for the phone search, he argues that Agent Kelley's account was unreliable because the agent could not recall whether the phone was taken from Appellant, or handed to Agent Kelley by Appellant. *See id*., at 9 (citing N.T. Suppression Hearing, 2/24/2023, at 40).

A trial court's decision to admit or suppress evidence must be upheld if it is supported by the record facts, and the ruling may only be reversed to correct an erroneous legal conclusion. *See Commonwealth v. Lagana,* 537 A.2d 1351, 1353–54 (Pa. 1988). "With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility

of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." ***Commonwealth v. Heidelberg***, 267 A.3d 492, 499 (Pa. Super. 2021) (citation and internal quotation marks omitted).

Under both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, warrantless searches and seizures are presumptively unreasonable and therefore prohibited, subject to a few recognized exceptions. ***See Commonwealth v. Saunders***, 326 A.2d 888, 896 (Pa. 2024). These constitutional protections are extended to parolees and probationers, with the caveat that the burden of proving the legality of a warrantless search is eased due to the diminished expectation of privacy afforded to such individuals. ***See Griffin v. Wisconsin***, 483 U.S. 868, 873–74 (1987).

Since parole is a form of criminal punishment imposed after a guilty verdict, the warrant requirement does not apply. ***See Commonwealth v. Williams***, 692 A.2d 1031, 1034–35 (Pa. 1997). However, even where a parolee has signed a parole agreement giving consent to a warrantless search, some checks against "state encroachment" upon a parolee's constitutional rights still apply. ***See id***., at 1037. That is, a warrantless search of a parolee's person or property "will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." ***Id***., at 1036.

Section 6182(b)(l) of the Pennsylvania Board of Probation and Parole Statute provides that the person or property of a supervised offender may be searched "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the department-supervised offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6182(d)(2). Circumstances that may support a finding of reasonable suspicion include:

> (i) The observations of officers.
>
> (ii) Information provided by others.
>
> (iii) The activities of the offender.
>
> (iv) Information provided by the offender.
>
> (v) The experience of the officers with the offender.
>
> (vi) The experience of officers in similar circumstances.
>
> (vii) The prior criminal and supervisory history of the offender.
>
> (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6182(d)(4).

"Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Commonwealth v. Gould**, 187 A.3d 927, 935-36 (Pa. Super. 2018) (citation and quotation marks omitted). The reasonable

suspicion standard is less demanding than probable cause, as "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause" and "can arise from information that is less reliable than that required to show probable cause." *Id*.

Consent for a search of an electronic device such as a cell phone is valid as long as it is voluntarily given. *See generally Commonwealth v. Gallagher*, 263 A.3d 1207, 1212 (Pa. Super. 2021) (*en banc*). "The burden of proving a valid consent to a search, since it represents a waiver of a substantial constitutional right, rests with the Commonwealth; and, the courts will indulge every reasonable presumption against such waiver." *Id*. (quoting *Commonwealth v. Griffin*, 336 A.2d 419, 421 (Pa. 1975)). "One who consents to a search retains the right to control the scope of consent given; this is intrinsic to the nature of consent and the consent exception to the warrant requirement." *Id*.

In this case, the suppression hearing established record facts that support the determination that Appellant's cell phone was searched by parole agents with reasonable suspicion of a parole violation. Appellant signed a parole agreement on April 6, 2021, giving express consent "to the search of [his] person, property and residence, without a warrant by agents of the Pennsylvania Parole Board." Commonwealth's Proposed Findings of Fact & Conclusions of Law in Opposition to Defendant's Motion to Suppress, 2/24/2023, at Exhibit B, para. 7 (Order to Release on Parole/Reparole).

- 8 -

In May of 2021, state parole agents received a report from Hatfield Township Police Department that its officers had been in contact with Appellant, a parolee, due to his suspected involvement in the purchase of a firearm, as well as his presence in a hotel room that was not registered with the parole office as Appellant's approved residence.

Later, in July of 2021, after not being able to reach Appellant after multiple attempts, parole agents went to Appellant's registered residence and learned that he had not been living there. When Appellant called his supervising parole agent on July 14, 2021, he was instructed to report to the parole agents' office the following day. Upon his arrival, parole agents asked Appellant where he had been residing and why they had not been notified of the change in his living arrangements.

Appellant admitted to residing somewhere other than his approved residence without having notified his supervising parole agents. He then presented his unlocked cell phone to Agent Kelley, apparently to demonstrate that he had recently tried to contact the parole office. Agent Kelly then began scrolling through the photos saved on Appellant's phone. But by that point, before looking through the phone, Agent Kelley had already determined that Appellant was in violation of the terms of his parole due to not residing at his approved residence, not notifying parole agents of his new address, and not reporting to his supervising parole agents that he had come into contact with the police.

Based on the testimony elicited at the suppression hearing, the suppression court's findings of fact, and the relevant case law, we find that Appellant's phone was lawfully seized and searched by Agent Kelley. The search of the phone was reasonably connected to Agent Kelley's duties as Appellant's supervising parole officer. Further, Appellant's admission to several parole violations gave Agent Kelley reasonable suspicion that evidence of those violations would be found in the device.

The need to verify a parolee's compliance with supervision requirements is one of the enumerated statutory factors that may give an officer reasonable suspicion. *See* 61 Pa.C.S.A. § 6182(d)(4)(viii). Once Appellant admitted to flouting several such requirements, the need clearly arose for Agent Kelley to verify the information Appellant was giving him. *See id*. Not only had Appellant admitted to such violations, he also had recently been the subject of a police investigation for illegally purchasing a firearm. It was therefore reasonable for Agent Kelley to suspect that evidence of Appellant's recent whereabouts would be contained within the photos saved in his phone. Thus, Agent Kelley had reasonable suspicion to justify the search, and the suppression court did not err in admitting the evidence obtained during the search of the device.[2]

_____

[2] Having concluded that the search of the phone was valid under these circumstances, it is unnecessary for this Court to further determine whether the Commonwealth carried its burden of proving that Appellant voluntarily
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/31/2025

---

consented to the search's scope.  It is also unnecessary for this Court to assess the legality of the subsequent search, performed by police after a warrant was granted, as Appellant has not briefed that discrete issue.