**UNITED STATES of America, Petitioner-Appellant,**

v.

**Marcus Robert CASTANEDA, Respondent-Appellee.[1]**

**No. 77–3349–A.**

United States Court of Appeals, Ninth Circuit.

Dec. 5, 1977.

---

1. The caption as used in the district court was *United States of America, Plaintiff vs. Castaneda, Defendant,* an improper one. For one to trace the case, we compound the error by again listing the United States first in the caption.

## INTERIM REPORT

CHAMBERS, Circuit Judge:

This interim report concerns events that should never have happened, a brouhaha in one of our district courts and the Court of Appeals.

Pursuant to a recommendation from a panel of this Court for an inquiry, Chief Judge Browning of this Court appointed me to conduct an investigation of the surrounding events. Accordingly I held a hearing in Los Angeles on November 19, 1977. Ultimately, it will be my duty to recommend whether any disciplinary proceeding should be initiated with respect to any members of the bar. But for now, this report will deal largely with the record.

Robert Castenada was indicted on January 26, 1977, for a series of bank robberies in the Los Angeles area. Ultimately, on April 15, in Courtroom 16 a district judge at Los Angeles found him not presently competent to stand trial. So, he is a government "guest" at the Terminal Island (Federal) Correctional Center near Los Angeles. In the robbery case, he was represented by

the Federal public defender of the Central District. Now we leave Courtroom 16 and its judge and go to Courtroom 10 and another judge.

On September 18, 1977, there was a stabbing at the Federal Terminal Island Center, resulting in a death.[2] Castaneda is either the suspect or one of several suspects. Necessarily and immediately, both FBI and in-house investigations began at the Center. The investigations appear to have been intense, including interrogating many guards and prisoners. There was an attempt to interview Castaneda.

This case fell into the lap of the district court, specifically Courtroom 10's judge, who received the first papers as the then current criminal duty judge of the court. It started on September 20 with the filing of a petition for the appointment of counsel under the Criminal Justice Act for Castaneda because he "needed help" during the investigation. Miscellaneous No. 6243 was assigned. The judge appointed the Federal public defender who had filed the petition.

Here we pause to look at round one because therein the first seeds of confusion arise. By what right can the public defender bestow in the district court in a caption the title of "United States, plaintiff" on the government? The government had not complained about anything. As a plaintiff, the designation of the United States is solely the business of the United States Department of Justice. On the premises here, the case should have been entitled "Castaneda v. Warden Jett." And, I read the petitions that followed as in the nature of mandamus, certainly attempted within the All Writs Act. For another proceeding, where no controversy existed with the law officers, a petition might have been filed as: "In the Matter of Protecting the Rights of Robert Castaneda, currently under investigation in connection with a death at Terminal Island Correctional Center."

---

**2.** One must wonder at the heroics present in this case. Castaneda had not yet been found competent to stand trial. Perhaps he may be indicted, but I do not foresee a murder trial and I wonder if his robbery indictment (18 robberies) will ever come on for trial. For the moment, concede that Castaneda did the stabbing.

Considering his status, he about had a license to kill. And, defense counsel would not really need the A.L.I. rule, the Durham rule, or our *Wade v. United States*, 9 Civ., 426 F.2d 69 (1970) to defend.

This being a case of first impression, considering the facts, it can take its time.

The next event was a filing of a petition on September 21, 1977, to permit a named psychiatrist to enter the prison and examine Castaneda. Again, this was handled ex parte without notice to or the presence of the United States attorney. The sought after order was duly entered.

On September 23, 1977, the defender filed a request for recordation of grand jury testimony concerning Castaneda. Up to this point, I believe the district judge had jurisdiction. Henceforward the events became subject to a jurisdictional attack made in district court, and the issue is before a panel of this Court.

On September 28, the defender filed an application for a subpoena duces tecum directed at the warden to produce the names of witnesses and documents. The matter was heard ex parte by the Courtroom 10 judge without notice. (On subpoenas for trial, one does not get a court order for a subpoena.) I conclude that when a court order [3] is required, the United States attorney is entitled to notice. Also, on the request for an order for subpoenas, it was not suggested in the application that the warden would be required to appear in about 48 hours. The warden had about 30 hours notice to comply from time of service on him. One must shake one's head.

On September 30, the warden having received the subpoena on the day previous, the government filed a motion to quash the subpoena. I now observe that a pretrial subpoena for documents for which a court order is required is to procure evidence which will be offered at trial. The things the public defender were after mostly consisted of discovery of steps probably not admissible at trial.

On September 30, a hearing was held on the motion to quash, both sides present for the first time. At the conclusion of the hearing, the district judge (Courtroom 10) limited the subpoenas to furnishing by the government the lists of potential witnesses (it excluded documents). Included in the order was a stay of it until October 7. The record shows that on October 6, the Court by minute order fixed the time for the compliance deadline at 5:00 p. m. on October 7, denying a government motion for extension of time.

The docket shows that on October 7 "an order to show cause re. contempt for failure to comply" was filed. The order to show cause has the name of the public defender and his assistant above the caption. It orders the warden and the two assistant United States attorneys to appear to show cause at 2:00 p. m. October 11 why they should not be held in contempt. I shake my head when I see that the courtroom deputy filed at 5:01 p. m. the order signed by the judge—one minute after the deadline. There was no motion by the public defender for such an order and no affidavit that the order for production had not been complied

---

3. Rules 16(a)(1)(C) and 17(c),· F.R.Cr.P., provide as follows:

16(a)(1)(C) *Documents and Tangible Objects.* Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

17(c) *For Production of Documentary Evidence and of Objects.* A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

I am in flat disagreement with the Public Defender's thesis that he can proceed ex parte to unilaterally get subpoenas under the Criminal Rules when the "case" is not yet a "criminal case." This would have been clear, I am sure, if the initial filing had been entitled Castaneda v. Warden Jett, which would have been the correct way to caption it. I take it that he insists the case was ab initio a criminal case.

with. October 7 was a Friday. Saturday and Sunday intervened, followed by Monday, the federal holiday called Veterans Day. However, the United States attorney late on the afternoon of October 7 was handed a copy of the 5:01 p. m. order that had been issued. Not being about to comply, the assistant United States attorneys knew earlier in the day they were in trouble. The United States attorneys went to the courtroom at 5:00 p. m. and found the courtroom dark. They had been advised that there would be a contempt hearing in the courtroom.

In things like this sequence somebody runs to the United States Court of Appeals. This the United States attorney did. On October 7, the United States attorney went to the office of Circuit Judge A in Los Angeles with a petition to stay the district court's orders re. the subpoena. The petition recited previous events, but it was obviously presented before the 5:01 p. m. contempt citation in district court was filed. Judge A wrote "Denied" on the petition and returned it to the United States attorney for filing with our clerk. The petition with its endorsed denial somehow reached our clerk's office in San Francisco on October 13.

But back to October 7. Sometime on the afternoon or evening of that day in a telephone call Judge A was asked by the United States attorney if he would reconsider his denial. The answer was "no". It is not clear from my inquiry hearing whether the 5:01 p. m. Courtroom 10 order had been issued at the time of this request to Judge A. But he must have been able to tell Judge A that the contempt process was about to roll. It is not clear whether Judge A had originally denied the stay on the ground of no merit or on the ground that there was no imminent danger.

The situation after 5:01 p. m. was serious and the United States attorney thereupon called Circuit Judge B, still at his office. An appointment was made for the United States attorney to see Judge B at 2:00 p. m. Monday, October 10, the holiday. The United States attorney says that on the weekend he called the public defender's office several times including Monday. No one answered, except an answering service. The message of the impending second hearing did not get through to the public defender before the hearing, so it was held ex parte. The public defender concedes his answering service is not much good. He should try another one. At the conclusion of the hearing, Judge B agreed to stay the proceedings in Courtroom 10, but insisted on substantial changes in the proposed order. The word processing center of the United States attorney's office had a new order ready for signing by Judge B on the morning of October 11 and Judge B signed it.

The core of my inquiry is: Did the United States attorney mislead Judge B as to the antecedent facts? In writing, the United States attorney did not. But did he do it orally or did he withhold certain facts? I am not ready to rule because, on this narrow issue, I feel I must resume the hearings and explore further.

I am prepared to say the public defender's reasons for not complying with Rule 3(j) of the district court are not satisfactory. It would also appear that the United States attorney on the record before Judge B did not prove much compliance with our Rule 6(g).

Initially, at my hearing, I made inquiry as to the handling of the case by the public defender, to see if there was aggravation of the United States attorney's staff which might mitigate the conduct of the latter if there should appear to be misconduct on the part of the latter. I think that the assistant public defender's handling of the proceeding was aggravating. But the key man in the United States attorney's staff says he was not aggravated. If so, he is not human. Perhaps, wisely, he seeks to meet the issues squarely and not plead mitigation by way of aggravation.

One wonders if the captioning of the case as *United States vs. Castaneda*, both improper and unauthorized, was a deliberate effort to get the case into Courtroom 10 before the criminal duty judge. Had it

been labeled mandamus (civil), the case would have been assigned by lot (in the vernacular: by wheel). I conclude entitlement was not deliberate. The assistant public defender concerned seems seriously to feel that because 18 U.S.C. § 3006A and other sections may permit counsel at times before indictment and permit employment of psychiatrists pre-indictment that the choice of weapons was his; and, because a subpoena ordinarily requires no advance hearing that he was clearly right in going ex parte all of the way. I am firmly convinced discovery motions or subpoenas for discovery pre-trial, pre-indictment and pre-arraignment require a notice and hearing (or opportunity to respond in writing). (In this paragraph and elsewhere, I have assumed, which I doubt, jurisdiction.)

So the public defender dropped the first banana peels. After a resumed hearing, we shall see later whether the United States attorney fed Judge B a bad banana.