**Lee B. JETT, Warden, Federal Correctional Institute, Terminal Island, and the United States of America, Appellants,**

v.

**Marcus Robert CASTANEDA, Appellee.**

**No. 78–1198.**

United States Court of Appeals, Ninth Circuit.

July 21, 1978.

Robert Ramsey, Jr., Asst. U. S. Atty., Los Angeles, Cal., for appellants.

James R. Dunn, Federal Public Defender, Los Angeles, Cal., for appellee.

Before TRASK, GOODWIN and TANG, Circuit Judges.

GOODWIN, Circuit Judge:

The warden of the Federal Correctional Institute, Terminal Island, appeals a judgment of contempt entered upon the application of Marcus Robert Castaneda, a prisoner. We reverse.

Castaneda was an inmate of Terminal Island, and while there became the prime suspect in a fatal stabbing that occurred in the prison yard. During the investigation he refused to answer questions until he talked with the assistant Public Defender who had represented him previously. Investigators then notified that attorney, who thereupon filed a motion in the district court for his appointment as Castaneda's counsel. The district court granted the motion.

Because of possible defenses of self-defense and insanity, the attorney also desired a list of and access to witnesses to the stabbing and an opportunity for a psychiatrist to examine Castaneda. The attorney presented motions and the district court entered orders without notice to the warden or to the United States Attorney. After a series of events partially described in *United States v. Castaneda*, 571 F.2d 444, 448 (9th Cir. 1977) (two opinions), which culminated in this finding of contempt against the warden, this court stayed the district court's actions pending appeal.

A threshold question is whether the district court had the authority to appoint an attorney for Castaneda before charges relating to the stabbing had been filed. The government now concedes this point, but because the district court and Castaneda's attorney treated the right to counsel as the jurisdictional basis for all that followed we will consider it independently.

The Criminal Justice Act, 18 U.S.C. § 3006A, provides for the appointment of counsel for anyone "for whom the Sixth Amendment to the Constitution requires the appointment of counsel or for whom, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel." § 3006A(a)(4).

The right to counsel during preindictment custodial interrogation is settled law. *Miranda v. Arizona*, 384 U.S. 436, 469–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois*, 378 U.S. 478, 484–85, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). This right includes appointed counsel if the suspect is indigent. *Miranda v. Arizona*, 384 U.S. at 472–73, 86 S.Ct. 1602. The right attaches to any custodial interrogation, even if the custody involves a different charge from that under which the suspect is held. *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

The right to counsel during custodial interrogation implements the Fifth Amendment right against self-incrimination. It does not proceed directly from the Sixth Amendment. However, this constitutional rationale need not detract from the district court's power under § 3006A. While a literal reading of § 3006A appears to limit its applicability to the Sixth Amendment right to counsel, the intent of Congress was clearly broader. Congress acted after *Mathis, Miranda,* and *Escobedo,* and it intended by its action to extend the "coverage of the act to include those instances where judicial decisions may require the appointment of counsel * * *." Its purpose was to obviate "the need to amend the act each time the right to counsel may be extended to new situations". H.Rep. No. 91–1546 (October 5, 1970), in 1970 U.S.Code Cong. and Admin.News, pp. 3982, 3988. In the light of this history, we are satisfied that Congress used "Sixth Amendment" as

shorthand for "constitutional right to counsel", whatever the specific derivation of the right. The district court had the power to appoint counsel for Castaneda, and it acted correctly in doing so.[1]

■ The district court's jurisdiction under § 3006A extended, however, only to the appointment of counsel. The power of a court to enter discovery orders in a criminal investigation when no case is pending before any court presents difficult problems of separation of powers. Granted, as Judge Chambers suggested earlier in this litigation (*United States v. Castaneda*, 571 F.2d at 445), something in the nature of mandamus under the All Writs Act, 28 U.S.C. § 1651, might have been available under appropriate procedure. But the informality of the procedures followed in this case led nowhere but to confusion, and to confusion compounded.

■ Federal courts exercise the judicial power of the United States pursuant to Article III of the Constitution and specific statutory grants of power. While district courts have certain responsibilities in connection with selecting, instructing, and supervising grand juries, Fed.R.Crim.P. 6, the investigation of crime is primarily an executive function. Nowhere in the Constitution or in the federal statutes has the judicial branch been given power to monitor executive investigations before a case or controversy arises. Without an indictment or other charge bringing a defendant before the court, or in the absence of a pending grand jury investigation, a district court has no general supervisory jurisdiction over the course of executive investigations.

We appreciate the district court's concern for the rights of a federal prisoner. Because Castaneda's possible crime occurred in prison, normal defense investigation was impossible. Interviewing witnesses while their recollections were fresh and a psychiatric examination of Castaneda soon after

the stabbing could make the difference between conviction and acquittal if Castaneda were later charged. An attorney fully armed with knowledge of the case might have concluded that it would be in Castaneda's best interest to talk with the investigators. Those investigators immediately involved did not object to the Public Defender's investigation. The FBI and the warden were willing to cooperate. The United States Attorney's office caused the problems.

■ Our holding that the district court had no jurisdiction to control the prosecutor's preliminary conduct does not mean that Castaneda is without redress. While the United States Attorney's office has control of the investigation, it must also suffer the consequences of its actions. If its behavior leads to a violation of a defendant's right to a fair trial, there are many remedies. After a case is commenced, a tainted indictment can be dismissed. A prosecutor may be subject to a suit to enjoin egregiously illegal conduct, and, of course, a conviction cannot withstand appeal if it is founded upon illegal evidence or unfair prosecutorial tactics.

■ We must hold on this record, however, that the district court, despite its commendable concern for the rights of a person whose condition made him vulnerable to possible overreaching by the government, had no jurisdiction to enter its discovery orders. The commission of a judge is not a general assignment to go about doing good. There is work enough for courts to do, and time enough for a judge to act when a case is properly brought before the court. In the matter presently before us, there was no case, no controversy, and no jurisdiction to make an order on discovery. Accordingly, there was no jurisdiction to cite anyone for contempt.

Reversed.

---

1. We agree with Judge Chambers that the Public Defender acted inappropriately in heading his petition for appointment "*United States v. Castaneda*". The government had not brought any charges, and the Public Defender cannot turn the government into a plaintiff by his or her own *ipse dixit*. Judge Chambers suggests other, more appropriate, headings. *United States v. Castaneda*, 571 F.2d at 445.