**Preston C. McCABE, Individually and as President of Local 747, United Brotherhood of Carpenters and Joiners of America, Plaintiff,**

v.

**Michael TROMBLEY, Dewitt Fisk, Edward Cooligan, Joseph Costaldo, Loyal Simmons, Allen Flewelling, Loren McClean, Ronald Timmerman, William A. Lawyer, and Phillip Allen all as Trustees of Adirondack and Vicinity District Council of Carpenters Health and Welfare Fund, Defendants.**

No. 85–CV–1381.

United States District Court,
N.D. New York.

Nov. 10, 1994.

William H. Bogart, P.C. (Carl E.M. Worboys, of counsel), Syracuse, NY, for plaintiff.

MacKenzie, Smith, Lewis, Michell & Hughes (Nancy L. Pontius, of counsel), Rochester, NY, for defendants Trustees and Fund.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

This action arises out of the termination of the Adirondack and Vicinity District Council of Carpenters Health and Welfare Fund ("Welfare Fund") in November, 1985. In his amended complaint, plaintiff asserts two causes of action sounding in breach of fiduciary duty and negligence against defendant trustees of the Welfare Fund ("the trustees").[1] He seeks damages of two million dollars, attorney's fees, punitive damages, interest and the cost of bringing this suit. Presently before the court is the trustees' motion for summary judgment, and their al-

---

1. The court previously dismissed plaintiff's complaint in its entirety with respect to defendant Johnson and Higgins of Connecticut, Incorporated. Document ("Doc.") 24. The caption has been altered to reflect this dismissal.

ternative motions to preclude plaintiff from introducing expert testimony at trial and for leave to substitute counsel. Also before the court is plaintiff's cross-motion for leave to file a second amended complaint. Oral argument was heard on these motions on March 8, 1991.

## I. BACKGROUND

In his sparsely worded complaint plaintiff alleges that defendant trustees violated their fiduciary obligations to plaintiff and Local 747 of the United Brotherhood of Carpenters and Joiners ("Local 747") by dissipating Fund assets and failing to provide the medical coverage for which the Fund was created. The complaint also alleges in a pendant state law claim that the trustees were negligent.

The Welfare Fund was established in 1958 pursuant to a collective bargaining agreement between the Adirondack and Vicinity District Council of the United Brotherhood of Carpenters and Joiners ("District Council") and the Northern New York Building Trades Employers Association. The District Council, composed of Local 747 and three other Locals, acted on behalf of the Locals in executing a trust agreement which set forth the responsibilities of the trustees of the fund. The trustees were authorized to make determinations as to the provisions, limitations, and conditions of payments to the Fund for life, health and disability benefits for union member participants, as well as eligibility requirements for the receipt of benefits. Payments were made through a "banking of hours" program, pursuant to which individual Locals negotiated with the multi-employer group a cents per hour contribution to the Welfare Fund for each hour a participating Local member worked. In order to qualify for health and welfare coverage for any six month period, a participant must have worked at least 400 hours in the previous six months. Any participant who worked more than 400 hours in such a period could "bank" up to 2,400 hours for protection against periods of unemployment. Local 747 negotiated a contribution of 85 cents per hour worked. Computer records listing hours worked were kept for each participating union member. Many participants

banked hours, and the Welfare Fund had a substantial surplus available to cover participant needs. From 1983 to 1985, however, the surplus was dissipated by the large number of claims presented.

In 1985 the trustees attempted to terminate the banked hours program and reduce benefits. The 1980 version of the Plan handbook, in effect when the events alleged in the complaint took place, provided that the banking of hours program could be terminated under specific, limited conditions:

> The trustees reserve the right to delete this entire section, effective on April 30th, of any year, if its impact upon the claim experience of the fund is more than anticipated or its operation shall jeopardize the fiscal soundness of the fund in any material way.

Plan Handbook, Exhibit ("Exh.") L attached to Document ("Doc.") 26, at 6. Apparently unable to resolve the accounting problem, the District Council decided on July 20, 1985 to terminate the Welfare Fund altogether, effective November 1, 1985. On August 10, 1985, the District Council authorized Locals to establish their own health and welfare funds and to divert the employer contributions due September 15, 1985 to their new funds.

Local 747 was aware in 1984 of the fiscal difficulties facing the Welfare Fund. Loyal Simmons, a member of Local 747 as well as a trustee for the Welfare Fund, hinted to fellow members that the Fund was in fiscal trouble and that they should set up their own health and welfare fund as a supplemental recourse. The members followed Simmons' advice, negotiating a 25 cents per hour contribution to their fund as part of the new collective bargaining agreement ratified May 17, 1985 and effective June 1, 1985. Although the Local 747 fund was designed to supplement, not replace, the existing Welfare Fund, in the aftermath of termination of the Welfare Fund the Local was forced to spend $340,000 from its fund to provide benefits to its members.

Plaintiff claims that defendant trustees withheld over $300,000 in banked hour contributions from Local 747 without providing benefits or returning the funds to the individ-

ual members who banked those hours, even though defendants returned banked funds to other Locals. Plaintiff further contends that the trustees had no authority to withdraw "the right of participation to banked hours for coverage" in that each participating member had a vested right to the value of his contribution to the Fund. Finally, plaintiff argues that the trustees never made a finding or determination that the banking of hours program impacted the claim experience of the Fund more than was anticipated, or that the program jeopardized the fiscal integrity of the Fund in a material way, as required by the Plan handbook. Thus, plaintiff concludes, the trustees violated their fiduciary duties to the members of Local 747.

In their motion for summary judgment, defendants argue that Welfare Fund participants had no vested rights with which to raise a claim, because the collective bargaining agreement in effect from 1982 to 1985 did not contain any provisions setting forth a specific level of benefits to be accorded to participating members by the Fund. Defendants further assert that plaintiff's negligence claim is preempted by ERISA, that plaintiff lacks standing to sue on behalf of Local 747, and that plaintiff has no private cause of action for damages for breach of fiduciary duty.

Plaintiff cross-moves for leave to amend the complaint, framing his role as plaintiff to include himself in an individual capacity, as President of Local 747, and as a representative of all of participants in the Fund. Defendants oppose the cross motion on the ground of futility.

## II. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### 1. Summary Judgment Standards

The principles governing summary judgment are set forth in Federal Rule of Civil Procedure 56(c) and do not warrant extended discussion here. When the record reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, the court may enter judgment without resort to a trial on the merits. In a triad of cases decided in 1986 the Supreme Court explicated the relative burdens on the parties when a summary judgment motion is raised, and encouraged lower courts to employ Rule 56 in pursuit of the just, speedy, and inexpensive resolution of disputes. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

With the rules embodied in these cases in mind, the court turns to the specific arguments raised by defendants in their summary judgment motion.

#### 2. Preemption

■ Defendants assert that plaintiff's pendant claim for negligence is preempted by ERISA. ERISA is a comprehensive statute designed by Congress to regulate the entire field of employee benefit plans, establishing that field "as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). *See also Reichelt v. Emhart Corp.,* 921 F.2d 425, 431 (2d Cir. 1990), *cert. denied,* 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 970 (S.D.N.Y.1994). ERISA's civil enforcement provision, 29 U.S.C. § 1132, creates an exclusive remedial scheme which preempts state law regarding any matters that "relate to" employee benefit plans. 29 U.S.C. § 1144(a); *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Its preemptive effect includes claims arising under state common law. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–1553, 95 L.Ed.2d 39 (1987).

Because the parties do not dispute that the Welfare fund is an employee benefit plan as defined by ERISA, the court turns to the issue of whether plaintiff's pendant claim of negligence is "related to" the Welfare fund for purposes of preemption. A claim under state law "relates to" an employee benefit plan, "in the normal sense of the phrase, if it has a connection with or reference to such a

plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983) (footnote omitted). As noted by the Supreme Court, ERISA's preemption clause is "conspicuous for its breadth." *FMC Corp.*, 498 U.S. at 58, 111 S.Ct. at 407. Nonetheless, not every state law having an impact on employee benefit plans, "no matter how small or how tangential," is preempted. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 144 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). In defining the distinction between state laws that relate to employee benefit plans and those that have only a "tenuous, remote, or peripheral" impact, the Second Circuit has generalized that

> laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental.

*Id.*, 869 F.2d at 146.

Applying this construction to the case at bar, it is clear that plaintiff's common law claim for negligence is preempted. His claim seeks damages arising out of the trustees' negligent management of the Welfare Fund.[2] His negligence claim is thus an alternative cause of action to one under ERISA for the collection of plan benefits or breach of fiduciary duty. If recovery of such damages under a theory of negligence were permitted, plaintiff could circumvent ERISA, which was designed to "ensure that plans and plan sponsors would be subject to a uniform body of law", thus minimizing the "burdens of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990); *see also Shackelton v. Connecticut Gen. Life Ins. Co.*, 817

F.Supp. 277, 283 (N.D.N.Y.1993) (McCurn, S.J.) ("The availability of . . . remedies under ERISA forecloses plaintiff from seeking that same recovery under state law."); *Adler v. Aztech Chas. P. Young Co.*, 807 F.Supp. 1068, 1072 (S.D.N.Y.1992) (dismissing common law fraud action as preempted by ERISA); *Fischman v. Blue Cross & Blue Shield of Connecticut*, 755 F.Supp. 528, 530–31 (D.Conn.1990) (dismissing common law claims for negligence and infliction of emotional distress as preempted by ERISA). Therefore, in so far as it addresses plaintiff's cause of action for negligence, defendants' motion for summary judgment is granted.

3. Standing

    a. Plaintiff's Standing on Behalf of Local 747

Defendants also argue that plaintiff's first cause of action, for breach of fiduciary duty, must be dismissed to the extent that plaintiff asserts a claim in his role as President of Local 747. Indeed, a strict reading of 29 U.S.C. § 1132(a) reveals that although ERISA authorizes civil suits by a participant or beneficiary to recover benefits due to him under the plan, and further authorizes suits by a participant, beneficiary, fiduciary, or the Secretary of Labor for relief for breach of fiduciary duty, it does not on its face confer standing to employee organizations. In *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983), the Second Circuit strictly construed § 1132 as not conferring jurisdiction over an action brought by a pension fund. While the court acknowledged that 29 U.S.C. § 1132(d)(1) expressly provides that a fund "may sue or be sued under this subchapter as an entity", it refused to find that the "carefully drafted provisions extending federal jurisdiction and standing to pension plan participants, beneficiaries and fiduciaries were incomplete." *Id.* Because the statute did not expressly confer standing upon pension funds, the court held

---

**2.** In response to an interrogatory, plaintiff characterized the damages sought as the expenses required to form, maintain, and fund the supplemental plan, plus the loss by individual members

of Local 747 of the value of their banked hours. Answer to Interrogatory 13, Exh. J attached to Doc. 26, at 8.

the trial court lacked subject matter jurisdiction to hear an action brought by a fund.[3]

Given the literal reading of 29 U.S.C. § 1132(a) by the Second Circuit in *Pressroom Unions,* the court concludes that plaintiff lacks standing to assert a claim on behalf of Local 747. The analysis in the instant case is more straight-forward than that in *Pressroom Unions,* where the court was confronted with an ambiguity in the language of ERISA. Standing for employee organizations is not mentioned in the statute, and this court can not substitute its will for that of Congress. *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) ("when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."); *Dillworth v. Gambardella,* 970 F.2d 1113, 1120 (2d Cir. 1992) ("Where the Legislature's purpose is plain from the words found in the statute, the statute must be enforced according to its terms." (citation omitted)). Because Local 747 is not a participant, beneficiary, or fiduciary, it has no standing to sue under ERISA. Therefore, in so far as it requests dismissal of all claims by plaintiff in his role as President of Local 747, defendants' motion for summary judgment is granted.

**b. Plaintiff's Standing as Plan Participant**

▮ Plaintiff also seeks to recover personally for defendants' alleged violation of fiduciary duty in allowing the dissipation of fund assets and failing to provide coverage.

Although plaintiff does not identify the specific sections on which he relies, claims for breach of fiduciary duty must be brought under 29 U.S.C. § 1132(a)(2) or § 1132(a)(3), and not § 1132(a)(1)(B) which provides for recovery of plan benefits.[4] *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 992 (7th Cir.1993); *Iwans v. Aetna Life Ins. Corp.,* 855 F.Supp. 579, 582 (D.Conn. 1994).

Unfortunately for plaintiff, neither § 1132(a)(2) nor § 1132(a)(3) allows an individual to recover damages. First, the Supreme Court has ruled that breach of fiduciary duty claims brought pursuant to § 1132(a)(2) inure to the plan, not to the individual beneficiary. *Massachusetts Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). According to the Court, "neither the statute nor the legislative history [of § 1132(a)(2) ] reveals a congressional intent to create a private right of action." *Id.* *Russell* therefore bars plaintiff from suing under § 1132(a)(2), since he seeks damages on his own behalf,

---

**3.** Plaintiff responds to defendants' jurisdictional argument by noting that he claims jurisdiction under 29 U.S.C. § 1451 rather than 29 U.S.C. § 1132. Section 1451 provides that:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party *under this subtitle* with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

29 U.S.C. § 1451 (emphasis added). However, the subtitle in which § 1451 is contained is one addressing subchapter III of ERISA, regulating plan termination insurance. Section 1132 is the provision which defines the scope of the court's subject matter jurisdiction over the instant suit, in which plaintiff alleges a breach of fiduciary duty.

**4.** ERISA sets forth a comprehensive civil enforcement scheme in 29 U.S.C. § 1132, which provides:

> (a) ... A civil action may be brought—
> (1) by a participant or beneficiary— ...
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.

29 U.S.C. § 1132(a).

Section 1109, referenced in subsection (2) of § 1132(a), sets forth potential liability for breach of fiduciary duty. Under section 1109, any fiduciary who "breaches any of the ... duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a).

rather than on behalf of the plan. *See Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993).

Second, while § 1132(a)(3) confers standing upon individual beneficiaries or participants, it does so only to the extent that such individuals seek "appropriate equitable relief" for violations of ERISA. *Burkhart,* 991 F.2d at 1011. Money damages are generally unavailable under this section. *Id.; Alfarone v. Bernie Wolff Constr. Corp.,* 788 F.2d 76, 79 (2d Cir.), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). "The plain language of the statute does not provide for monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase would include an award of money damages." *Burkhart,* 991 F.2d at 1011; *see also Novak v. Anderson Corp.,* 962 F.2d 757, 759–61 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993) (reviewing legislative history of ERISA and concluding that § 1132(a)(3) does not authorize awards of money damages). Since plaintiff seeks monetary damages, rather than equitable relief, he is precluded under *Burkhart* from suing under § 1132(a)(3).

The cumulative effect of these two conclusions is that plaintiff lacks standing in his individual capacity to sue under a theory of breach of fiduciary duty for the damages he seeks. Because plaintiff lacks standing both as an individual and on behalf of Local 747, his cause of action for breach of fiduciary duty is dismissed in its entirety.

#### 4. Vested Benefits

Plaintiff's only remaining potential claim is for benefits which were vested and due to him as a participant. Such claims are recoverable under 29 U.S.C. § 1132(a)(1)(B). Plaintiff asserts that each participant had a vested interest in his banked hours benefit. Memorandum of Law in Opposition to Summary Judgment, Doc. 30, at 9–11.

Plaintiff's argument is misguided because his complaint contains no cause of action for recovery of benefits under the plan. He states only one cause of action for negligence, which is preempted by ERISA, and another for breach of fiduciary duty, for which he may not recover damages. Whereas standing for suit to recover benefits due under the plan is conferred by 29 U.S.C. § 1132(a)(1)(B), standing for a breach of fiduciary duty suit is addressed specifically in § 1132(a)(2), and generally in § 1132(a)(3). By its nature, plaintiff's cause of action for breach of fiduciary duty addresses §§ 1132(a)(2) and 1132(a)(3), and does not implicate § 1132(a)(1)(B). However deserving plaintiff may be of receiving his individual stake in the Plan, the court can not entertain his current arguments aimed at recovering the same because the complaint does not state a cause of action for recovery of plan benefits.[5] *See Jett v. Castaneda,* 578 F.2d 842, 845 (9th Cir.1978) ("The commission of a judge is not a general assignment to go about doing good.").

As all claims against defendants are dismissed, defendants' motion for summary judgment is granted.[6]

### B. Plaintiff's Motion for Leave to Amend

Plaintiff cross-moves for leave to amend his complaint to include himself as plaintiff in a representative capacity, on behalf of all other participants of the Welfare Fund. The general rule is that leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has interpreted this adjuration as meaning that "if the underlying facts or circumstances relied on by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Nonetheless, where it appears that granting a motion to amend will result in unfair delay,

---

**5.** This pleading defect in plaintiff's complaint was twice repeated. In his amended complaint, Doc. 3, and in his proposed amended complaint, Doc. 38, plaintiff alleges the same two causes of action.

**6.** Because the court grants summary judgment, it denies as moot defendants' alternative motions to preclude plaintiff from introducing expert testimony at trial and to withdraw as counsel for defendants Loyal Simmons due to a conflict of interest between his role as trustee and his role as union member.

or where the amendment would be futile, the trial court is within its discretion to deny leave to amend. *Id.,* at 182, 83 S.Ct. at 230; *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir. 1994).

■ In the instant case plaintiff's proposed amendment is futile for two reasons. First, the claims specified in plaintiff's proposed second amended complaint, Doc. 38, are identical to those in the first amended complaint. As such, the proposed claims necessarily suffer from the same jurisdictional and pleading defects fully described above. In short, no participant would have standing to recover the damages sought in plaintiff's complaint.

Second, plaintiff's proposed second amendment to the complaint would be futile because the claims of the additional plaintiffs would not "relate back" to the filing of the first amended complaint, and would therefore be barred by the statute of limitations. Under Federal Rule of Civil Procedure 15(c), an amendment adding a party to a pleading relates back to the time the pleading was filed when: (1) the claims asserted in the amended complaint arise out of the same transaction or occurrence set forth in the original pleading; and (2) within the 120 day period provided by Rule 4(m) for service of the summons and complaint, defendant (A) received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought by that party.[7]

In the case at bar, the first condition for relation back is clearly met, in that the occurrences giving rise to the complaint by plaintiff individually are the same as those underlying the proposed action by plaintiff on behalf of all other participants of the Welfare Plan. However, plaintiff fails to meet the second condition. Although plaintiff's counsel avers that "defendants have always been on notice that [the suit] was brought in a representative capacity", Worboys Affidavit, attached to Plaintiff's Notice of Motion, Doc. 29, at ¶ 5, defendants submit uncontroverted evidence that shows counsel's assertion to be unfounded. In a deposition taken January 5, 1990, plaintiff Preston McCabe stated unequivocally that while he was proceeding on behalf of Local 747, he was not acting on behalf of the individual members thereof. *See* Transcript of Deposition, Exh. I attached to Defendants' Notice of Motion, Doc. 26, at 40. Significantly, plaintiff's deposition was taken after the three year statute of limitations for asserting claims of breach of fiduciary duty under 29 U.S.C. § 1113(2) expired. Plaintiff offers no evidence to counter his previous statement, and the record reveals no genuine issue of fact as to whether defendants had notice that plaintiff intended to pursue a suit on behalf of individual members. The court therefore concludes as a matter of law that defendants were not on notice that plaintiff was proceeding in a representative capacity. *See Chimapan v. V.A. Hosp. at Montrose,* 894 F.2d 557, 559 (2d Cir.1990) (where record contains conflicting evidence on whether requirements of Rule 15(c) are met, court must conduct hearing). The court therefore holds that plaintiff's amendment would not relate back, and his proposed amendment is futile in that the claims by the proposed additional plaintiffs are barred by the statute of limitations. *Mackensworth v. S.S. American Merchant,* 28 F.3d 246, 252 (2d Cir.1994) ("to breath life into [such claims] would undermine the purpose of repose for which statutes of limitations were designed").

Hence, for both reasons stated, plaintiff's motion for leave to file a second amended complaint is denied as futile.

## CONCLUSION

In sum, defendants' motion for summary judgment is granted. Defendants' alterna-

7. Although the language in Fed.R.Civ.P. 15(c) refers to parties against whom claims are made, the rule applies to amendments adding plaintiffs as well as defendants. *See* Notes of Advisory Committee to 1966 Amendment to Rule 15(c), reprinted in 39 F.R.D. 69, 83–84 ("the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs"); *see also Advanced Magnetics, Inc. v. Bayfront Partners Inc.,* No. 92 Civ. 6879, 1994 WL 324018, at *3, 1994 U.S. Dist. LEXIS 9111, at *8 (S.D.N.Y. July 6, 1994).

tive motions to preclude expert testimony and to withdraw as counsel for defendant Loyal Simmons are denied as moot. Plaintiff's motion to amend the complaint is denied. The Clerk of the Court is directed to enter judgment in favor of defendants.

It is So Ordered.